STATE OF MISSOURI, Respondent, *v.* CHARLES F. KRING, Appellant.

### October 18, 1881.

1. A court whose territorial jurisdiction has been lessened does not lose its right to try an indictment properly returned to it prior to such limitation, if the *situs* of the crime remains within the jurisdiction.

2. A failure to contradict affidavits in support of a change of venue does not necessitate a granting of the motion.

3. Appellate courts will not interfere with the action of a trial court in refusing to grant a change of venue, if no injustice has been done.

4. A plea of guilty coupled with a condition should be disregarded, and if the defendant refuses to plead further the court should direct a plea of not guilty to be entered.

5. The defendant may be put on trial for murder in the first degree, where the indictment charges that offence, after a sentence under a plea of guilty of murder in the second degree has been set aside and the plea withdrawn.

6. The act of March 26, 1881, which provides for a trial by another judge when the judge of the St. Louis Criminal Court is incompetent, is not in violation of any constitutional provision.

7. The title of the act does not connect incongruous subjects, neither is it a local or special law within the meaning of the constitutional inhibition.

8. The action of the trial court in denying an application for a continuance not in compliance with the statutory requirements, will not be interfered with, on appeal.

9. The statute is substantially complied with if the defendant is furnished with a list of forty-seven qualified jurors forty-eight hours before the trial.

10. A declaration by the deceased, detailing the circumstances of the homicide, made a day or two before her death under a sense of impending dissolution, is competent in a trial for the murder.

APPEAL from the St. Louis Criminal Court, BURCK-HARDT, J.

*Affirmed.*

CHARLES P. JOHNSON, L. D. SEWARD, P. N. JONES, and DANIEL HAY, for the appellant: The indictment, having been found in the county, could not properly be tried in the city of St. Louis. — *The State* v. *Lewis*, 69 Mo. 92. The court erred, under the circumstances, in refusing to grant a change of venue. — *The State* v. *Gerry*, 69 Mo. 430 ; *Freligh* v. *The State*, 8 Mo. 606 ; *The State* v. *Reed*, 11 Mo. 379 ; *The State* v. *Gamble*, 46 Mo. 350. The provision of the statute prohibiting a change of venue from the St. Louis Criminal Court was abrogated and annulled by the new order of things under the Scheme and Charter, and under the constitution of 1875. — *The State ex rel.* v. *Walsh*, 69 Mo. 408. A plea of guilty regularly pleaded

and regularly received by the court is equivalent to a conviction. —*The People* v. *Goldstein*, 32 Cal. 432 ; *Shephard* v. *The People*, 25 N. Y. 419. One convicted of murder in the second degree under an indictment for murder in the first degree found prior to 1875, cannot afterwards be tried for murder in the first degree. — *The State* v. *Ross*, 29 Mo. 39 ; *The State* v. *Smith*, 53 Mo. 139. The act of the legislature under which a special judge, was appointed to try this cause is unconstitutional. — Const. 1875, Art. IV., sects. 28, 53, 54. A general law does not, by implication, repeal a special law. —*The State* v. *Pearcy*, 44 Mo. 159 ; *The State* v. *Failer*, 49 Mo. 310 ; *The State* v. *McDonald*, 38 Mo. 529. The act of 1877 with reference to special judges does not apply to the St. Louis Criminal Court (Rev. Stats., sect. 1999 ; *The State* v. *Daniels*, 66 Mo. 192) ; and the order appointing Judge Burckhardt should have been set aside. — *The State* v. *Houser*, 28 Mo. 233. The affidavit for a continuance was in compliance with the statute, and set forth sufficient grounds for a continuance which should have been granted.— *Barnum* v. *Adams*, 31 Mo. 332 ; 31 Mo. 147 ; *The State* v. *Klinger*, 43 Mo. 127. Certain jurors, having formed opinions as to the guilt or innocence of the accused, were incompetent. — *The State* v. *Brown*, 71 Mo. 454.

JOSEPH R. HARRIS, circuit attorney, for the respondent : Appellate courts will not reverse a question of fact presented and passed on in deciding an application for a change of venue. —*The State* v. *Guy*, 69 Mo. 431 ; *The State* y. *Brown*, 71 Mo. 454. The jurisdiction of the St. Louis Criminal Court to try this cause was not affected by the adoption of the Scheme and Charter. — *The State* v. *Brown*, 71 Mo. 454 ; *The State ex rel.* v. *Laughlin*, 73 Mo. 443. The mandate of the supreme court was properly obeyed, by the trial court, in again placing the defendant on trial under a plea of not guilty entered by direction of the court. —*The State* v. *Stevens*, 71 Mo. 535.

BAKEWELL, J., delivered the opinion of the court.

Defendant was indicted at the March term, 1875, of the St. Louis Criminal Court for the murder of Dora C. Broemser. He was convicted of murder in the first degree, and the judgment was reversed on appeal. Two mistrials were then had. At the October term, 1879, defendant pleaded guilty to murder in the second degree, and was sentenced to imprisonment in the penitentiary for twenty-five years. On appeal, this sentence was reversed and the cause remanded. At the May term, 1881, defendant was again convicted of murder in the first degree, and this appeal is from the judgment entered upon that conviction.

It appears from the evidence that on January 4, 1875, Dora C. Broemser was a married woman of respectability, living in St. Louis with her husband; that about eight o'clock on the evening of that day, defendant Kring appeared in the alley in the rear of the residence of Mrs. Broemser, and sent up word to her in the house that he wanted to see her. She sent back word that unless he went away she would send her husband down to him. He replied that she knew her husband was out of town, and that if she did not come down he would come up stairs. She then came to him in the alley, accompanied by her sister-in-law. Defendant then told Mrs. Broemser that he wanted her to marry him. She said that she had a husband and children, and could not do so. He said he must have an immediate answer. She told him she was afraid he would shoot her. He said he was not armed, and required her to say whether she would go with him. She said "no," and started to run. Kring then fired at her twice; one shot struck her in the leg; the second penetrated the back below the shoulder blade. The pistol showed that it had missed fire at the third chamber; and Mrs. Broemser states in her dying declaration that, as she was lying on the ground, he put the pistol to her mouth and drew the trigger, but the pistol missed fire. A few days

afterwards Mrs. Broemser was delivered of a child, three months before the term, which died before its mother, and on the 16th of January Mrs. Broemser herself died from the effects of the wounds inflicted by Kring.

The defence was insanity. This defence was not established to the satisfaction of the jury.

1. The grand jury which presented the indictment was taken from the body of St. Louis County, before the separation of the city and county, and the cause was tried by the criminal court of the city of St. Louis, after that separation was effected by the adoption of the Scheme and Charter, and after the jurisdiction of the St. Louis Criminal Court had been restricted to the city of St. Louis.

We see no error in this. The grand jury which returned the bill was summoned from the body of the county, or political subdivision of the state, in which the offence was committed. The bill was returned to the St. Louis Criminal Court, the court in which defendant was tried. It is not pretended that at the time of the indictment and the time of the trial, this St. Louis Criminal Court had not jurisdiction over offences committed within the city of St. Louis, or that this offence was not committed within that city. We know of no principle of law which should lead us to declare that, because a territory lying outside of the district within which the offence was committed has, since the commission of the offence, been withdrawn from the jurisdiction of the St. Louis Criminal Court, therefore this indictment, good at the time, has become bad. But, if no ground exists for quashing the indictment, the cause is undoubtedly to be tried on the indictment, and by the court to which the indictment was returned, and which had then, ever since has had, and still has, exclusive original jurisdiction of the crime of murder committed, as in this case, within the corporate limits of the city of St. Louis, those limits not having been restricted in the meantime, and the place of the homicide having been, ever since the crea-

tion of the St. Louis Criminal Court, within the territorial limits of its jurisdiction. The objection that the indictment was found in one county, and the trial had in a court that has lost jurisdiction over that county, seems to be a play upon words. The indictment was found in a political subdivision of the state over which the court to which it was returned had then jurisdiction; and within which the offence was committed; and, the court, remaining the same court, the offence is tried in that court, which has never lost jurisdiction over the territory within which the offence was committed, that territory being, from first to last, a part of a political subdivision of the state within which the offence was committed, the indictment found, and the trial had.

2. We see no error in the action of the trial court in overruling the motion for a change of venue. Eleven witnesses, including three of the counsel for appellant, testified in support of the motion, that they did not think that defendant could have a fair trial in the city of St. Louis. The contention seems to be that, because there was no cross-examination, and because no witnesses were examined in rebuttal, the trial court ought to have granted the motion. We think that unless facts and circumstances appeared, to the satisfaction of the court, establishing the conclusion, the application was properly refused. The belief of the witnesses imposed no obligation upon the court. The judge of the St. Louis Criminal Court must be supposed to have his own knowledge of the temper of the community of which he is a member, in which he resides, and by which he is chosen for the important office that he holds. The jury list, as I learn from inquiry of the jury commissioner, is composed of over thirty-two thousand names. Many of the men on the list are coming and going. The homicide in question was committed more than six years before this last trial. It would be strange if, in so large a list, many names could not be found of men who had never heard of

the case, or who had no recollection as to reports current when the event was fresh, and who knew nothing as to comments, in the newspapers or otherwise, upon the homicide. We ought not to interfere unless we are satisfied that injustice was done by refusing the application. And, inasmuch as the record shows as a matter of fact, that a jury was, without difficulty, empanelled of men who had hardly heard of the case, and who had no improper prejudice or bias, we see no good ground for interference in this respect. The statutory provision now in force is not that under consideration in *Freligh* v. *The State* (8 Mo. 610). Under the old statute (Rev. Stats. 1835, sect. 17) it was held that there was no discretion — that where the requirements of the act were complied with, the change must be granted. And the statutory provision is to that effect in some states; but in most of the states of the Union, and in Missouri, the matter is one of sound judicial discretion. *The State* v. *O'Rourke*, 55 Mo. 440. In Missouri the exercise of that discretion is subject to revision on appeal. But it should clearly appear that there has been an abuse. *The State* v. *Guy*, 69 Mo. 432.

3. At the October term, 1879, defendant being charged with murder in the first degree, had, with the consent of the prosecuting attorney, entered a plea of guilty of murder in the second degree, and was thereupon sentenced to imprisonment in the penitentiary for twenty-five years. After this sentence, he filed a motion to set aside the judgment, accompanied with affidavits tending to show that he had entered his plea upon an understanding with the circuit attorney, that his punishment should not exceed ten years. On appeal to the supreme court, it was determined that the trial court should have permitted defendant to withdraw the plea of guilty of murder in the second degree and to enter the plea of not guilty. *The State* v. *Kring*, 71 Mo. 551. When the mandate of the supreme court reversing the sentence and remanding the cause had been filed in the

trial court, the defendant appeared in open court accompanied by his counsel. Defendant was asked by the court if he desired to withdraw his plea of guilty of murder in the second degree, and to re-enter his plea of not guilty of murder in the first degree. To which the defendant replied: "No, sir; I desire to withdraw no plea; I stand by the agreement made between the circuit attorney and myself." To which one of defendant's counsel added, "As it is entered in the record of this case." The court said: "You take the position that the agreement is valid, and that the court is bound to carry it out." Defendant's counsel replied: "Yes, sir. Defendant desires to stand by the plea of guilty of murder in the second degree, in order that the court may mete out sentence." The court then asked counsel what they would do with the motion and affidavits. Counsel for defendant replied that these had subserved their purpose, and "do not cut any figure just now." And counsel for defendant moved the court to sentence defendant under his plea of guilty of murder in the second degree. The court directed this motion to be put in writing. Counsel for defendant then suggested orally, that the court correct its sentence under the agreement. The court then directed the motion to permit defendant to withdraw his plea of guilty of murder in the second degree, and to enter his original plea of not guilty, to be put on the law docket, took the motion under advisement, and continued it, and, at the next term, sustained the motion. The prisoner was again asked whether he desired to withdraw the plea of guilty and plead not guilty; but declined to say anything further. The court then set aside the plea of guilty of murder in the second degree; and the prisoner being arraigned on the indictment, stood mute; whereupon the court directed the plea of not guilty of murder in the first degree to be entered.

In this we see no error, but rather a compliance with the direction of the supreme court. The theory of counsel

for defendant, that a plea of guilty of murder in the second degree, regularly entered and received, precludes the state from prosecuting the defendant for murder in the first degree, is inconsistent with the ruling of the supreme court in *The State* v. *Kring* (71 Mo. 551), and in *The State* v. *Stephens* (71 Mo. 535). The declarations of defendant that he would stand upon his plea already entered, were all accompanied with a condition, that the court should sentence him for a term not to exceed ten years, in accordance with an alleged agreement with the prosecuting attorney, which the court would not recognize. The prisoner did not stand upon his plea of guilty of murder in the second degree; he must therefore be taken to have withdrawn that plea; and, as he refused to plead, the court properly directed the plea of not guilty of murder in the first degree to be entered.

Formerly it was held in Missouri (*The State* v. *Ross*, 29 Mo. 32), that, where a conviction is had of murder in the second degree, on an indictment charging murder in the first degree, if this be set aside the defendant cannot again be tried for murder in the first degree. A change introduced by section 23 of Article II. of the constitution of 1875, has abrogated this rule. On the oral argument something was said by counsel for defendant to the effect that, under the old rule, defendant could not be put on trial for murder in the first degree, and that he could not be affected by the change of the constitutional provision, the crime having been committed whilst the old constitution was in force. There is, however, nothing in this. The change is a change, not in crimes, but in criminal procedure, and such changes are not *ex post facto*. *Gut* v. *The State*, 9 Wall. 35; *Cummings* v. *Missouri*, 4 Wall. 326.

4. At the November term, 1880, defendant filed his motion for a jury from St. Louis County, on the ground of prejudice against him on the part of the inhabitants of the city. This motion was overruled; but afterwards, the

court, on reconsideration of the matter, granted the motion. Three hundred jurors were summoned from the county, at the request of counsel for defendant. When these jurors appeared, defendant challenged the array, on the ground that there was no warrant of law for summoning jurors residents of the county by the sheriff of the city. The challenge was overruled. Defendant then applied for a special judge, on the ground of prejudice in the mind of the judge of the criminal court. This motion was not then passed upon; but the court, of its own motion, discharged the jury, and continued the cause. The case was then continued from term to term until the March term, 1881, when the court, considering the affidavits as to the incompetency of the judge of the criminal court to try the cause, and it appearing that counsel could not agree upon an attorney possessing the qualifications of a judge to try the cause, or upon a special judge, the cause was continued and Judge Burckhardt, of the Second Judicial Circuit, was appointed by the court to try the cause. This order was made on April 27, 1881, in accordance with the provisions of the act of March 26, 1881. Sess. Acts 1881, p. 120.

The act in regard to the St. Louis Criminal Court (Rev. Stats. 1508, 1509, sects. 16, 17, 18), provided that, in case of change of venue, the cause should be sent to the circuit court of St. Louis County; and that no change of venue should be granted to another county, but a special *venire* should be issued to summon a jury from St. Louis County outside of the city, if the affidavits set forth prejudice on the part of the inhabitants of the city. But, by section 1999 of the Revised Statutes, it was subsequently provided that the provisions of the criminal code applicable to the circuit court shall also be applicable to any court of record exercising criminal jurisdiction, in all cases where no other or different provision of law is made. Under the general provision of the criminal code (Rev. Stats., sect.

1878), a special judge may be selected from the members of the bar; but the act of March 26, 1881 (Sess. Acts 1881, p. 120), provides that changes of venue shall be allowed from the St. Louis Criminal Court, but that no special judge shall be selected from the members of the bar to sit, on account of incompetency of the judge of the criminal court; but that, in case of his incompetency, the judge of the St. Louis Criminal Court may, by order of record, set down the cause for trial, and notify any judge of any circuit or of any criminal court in the state to try the cause, as was done in the present case. The order made seems to have been in all respects a compliance with the law of March 26, 1881.

5. But it is contended that that law is unconstitutional. So far as the title of the act is concerned, it is not calculated to deceive, and fairly gives notice of the subject. Nor can it be said that the act connects incongruous subjects. *Luther* v. *Saylor*, 8 Mo. App. 424; *The State to use* v. *Aubuchon*, 8 Mo. App. 325. Nor can we see that a more general law could have been made applicable to the case Laws advantageous to one locality and less applicable to the state at large, are held not to come within the constitutional inhibition. Nor is the act a local or special law within the meaning of section 54 of Article IV. of the constitution, any more than a law changing the terms of any circuit court of the state is a local or special law. The fact that the law relates to matters about which the people of the city of St. Louis are specially concerned, does not make it a local law. The law operates in a single political subdivision of the state, but it affects the rights of all the people therein. *The State ex rel.* v. *Shields*, 4 Mo. App. 259. We do not see that the act violates any provision of the organic law of the state.

6. The application for a continuance seems to have been properly overruled, as not complying with the statutory requirements in all respects. The ruling of the trial courts

in this matter is seldom interfered with. Certainly this conviction ought not to be reversed on any such ground, unless it can be made to appear that defendant was injured by being deprived of the testimony of the absent witness. There is no ground whatever for suspecting anything of the kind in the present case.

7. This record shows that defendant's counsel were furnished with a list of the forty-seven jurors at 3 P. M. on Saturday, May 15th, and time given until 3:30 P. M. on the following Monday. The defendant was therefore furnished with a list of the jurors summoned, in substantial compliance with the statute. Rev. Stats., sect. 1904.

8. Defendant complains that his counsel were not permitted to ask jurors as to their residence and business, or if they had a prejudice which would prevent their giving defendant a fair and impartial trial; and that jurors were accepted who stated that they had formed and expressed an opinion as to defendant's guilt or innocence from reading the testimony of former trials in the newspapers. But there is no warrant in the record for these allegations. Nothing of the sort occurred on the trial, except that the trial court once sustained an objection to asking the occupation of a juror, but immediately afterwards withdrew the ruling. If any man examined on his *voir dire* was not asked as to his business, it was because counsel chose not to put the question.

9. Counsel for the defendant object to the dying declaration of Mrs. Dora Broemser, on the ground that it does not appear that she knew she was going to die when she made the statements. The truth is that the record shows with unmistakable and rather unusual clearness that the woman knew at the time she made the statements in evidence that she could not possibly recover; that she knew they were keeping the corpse of her baby to bury it with her; that she had no hope of recovery; that she expected to die within a day or two at the furthest; and that she

said so at the time she made her dying declaration to her
physician who testified in regard to it. · The declarations
of Mrs. Broemser as to the circumstances of the homicide
were made under a sense of impending death, and in the
prospect of almost immediate dissolution. This appears
not only from her own statement at the time; but from
the opinion of her medical attendant, expressed to her, and
on the witness stand, and from all the circumstances of the
case.

The record has been examined with care, and nothing
has been discovered to warrant a reversal of the judgment.
It is therefore affirmed. All the judges concur.