THE STATE v. JAMES ANDERSON, Appellant.

Division Two, July 9, 1913.

1.  INFORMATION: Assault With Intent to Kill.  An information charging that defendant "then and there in and upon one Novella Anderson then and there being feloniously, on purpose and of his malice aforethought, did make an assault and did then and there feloniously, on purpose and of his malice aforethought shoot and wound her, the said Novella Anderson, with a certain shotgun then and there loaded with gunpowder and leaden balls, which shotgun he, the said James Anderson, in his hands then and there had and held, with the intent then

State v. Anderson.

and there her, the said Novella Anderson, feloniously, on pur-
pose and of his malice aforethought then and there to kill and
murder," etc., is sufficient in every respect.

2. ———: ———: **Deadly Weapon.** If the weapon alleged by
the information to have been used is such as is judicially noticed
by the courts to be deadly, then the information need not allege
that the weapon used was a deadly one.

3. ———: **Plea in Abatement: Complaint Before Justice Made
by Another.** If the information filed in the circuit court upon
which defendant was tried was made upon the oath of office of
the prosecuting attorney, a plea in abatement should not be
sustained for that the affiant who made the complaint before
the justice of the peace was not present and had no personal
knowledge of the shooting.

4. ———: **Preliminary Hearing.** A defendant, who was charged
with an assault with intent to kill by an information filed in
the circuit court on March 4, 1911, was not entitled to a pre-
liminary hearing before a justice of the peace.

5. ———: **Preliminary Hearing for Mayhem: Charged With
Assault With Intent to Kill.** The prosecuting attorney is
not bound by the name with which the justice of the peace
labels an offense when he dockets a complaint. Where the
justice accorded the defendant a preliminary hearing, but erro-
neously styled the prosecution instituted by the complaint of
the father of the assaulted woman a "prosecution for mayhem,"
when both the allegations of the complaint and the proof showed
the offense was an assault with intent to kill, it cannot be held
that, because of that erroneous labeling of the case, the defend-
ant was not accorded a preliminary hearing on the charge
made by the information, to-wit, an assault with intent to
kill.

6. ———: **Filed on Eve of Meeting of Grand Jury.** Prosecu-
tions for felonies may be instituted by indictment by a grand
jury or an information filed by the prosecuting attorney, and
the two remedies are concurrent. It was not an invasion of
the rights of the defendant for the prosecuting attorney to file,
on March 4th, an information charging a felony, when a grand
jury had already been summoned to convene on March 6th.

7. **ASSAULT: Wife as Witness Against Husband.** The wife is a
competent witness to testify against her husband charged with
making an assault upon her with intent to kill.

8. ———: **Ten-Year-Old Child as Witness.** The statute, by
strong implication at least, makes a child ten years
old, a competent witness. But even if it does not settle
it, the holding of the trial court, who, after examining her upon
her *voir dire* at such length as to satisfy himself and ruled that
she was competent, will not be disturbed by the appellate court.

9. ———: **Testimony of Another Offense: Res Gestae.** Where defendant was charged with shooting his wife with a shotgun only, testimony that, after defendant had emptied his shotgun, shooting her in the head and arm, and by the second shot practically tearing her arm off, and she had run from the house, he hastily obtained a rifle, and, overtaking her about forty yards from the scene of the first shooting, seized her by the uninjured arm, and shot her with the rifle, is competent as *res gestae*, even though it may show the commission of another offense.

10. **CHANGE OF VENUE: Prejudice of Inhabitants: Discretion of Court: Fair Trial.** The matter of granting a change of venue is bottomed upon the sound discretion of the trial judge. It is only when he plainly and palpably abuses this discretion to such an extent as to preclude to defendant a fair trial that the Supreme Court will interfere with his denial of defendant's application charging the inhabitants to be prejudiced against him. Where at the immediate time of the commission of the offense of shooting his wife with a shotgun there was considerable feeling against defendant and some talk of mob violence and expressions that he was guilty, brought about by newspaper reports, but at the time of the trial eleven months later the excitement and feeling had died down, and no objections were made to jurors, and the evidence of defendant's guilt is clear and undenied, it will not be held that by a refusal to grant defendant a change of venue he was denied a fair trial.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Lamar, Lamar & Lamar* for appellant.

*Elliott W. Major*, Attorney-General, and *A. W. Stewart* for the State.

(1) The information conforms to the requirements of the statute and properly charges the offense. R. S. 1909, sec. 4481; State v. Bond, 191 Mo. 567; State v. Prendible, 165 Mo. 332; State v. Borton, 142 Mo. 453. (2) The complaint upon which the defendant was held charges him with malice aforethought to *maim* and *kill* and *murder*. The fact that the justice

of the peace labeled the case *mayhem* does not estop the prosecuting attorney from filing an information charging defendant with assault with intent to kill. When several intents are charged the proof of either is sufficient. State v. Chumley, 67 Mo. 44. (3) By the amendment to the Constitution adopted in November 8, 1900, indictments and informations become concurrent methods for prosecution of felonies. Constitution, art. 2, sec. 12; State v. Kyle, 166 Mo. 287; State v. Bouner, 178 Mo. 424; State v. Gregory, 178 Mo. 55. The information in this case was verified by the prosecuting attorney, and filed with the clerk of the court, March 4, 1911. The grand jury was not impaneled until March 6, 1911. The mode of procedure first instituted for any offense shall be pursued to the exclusion of the other, so long as the same shall be pending and undetermined. R. S. 1909, sec. 5055; State v. Gieseke, 209 Mo. 339; State v. Harvey, 214 Mo. 408. (4) On an application for a change of venue because of the prejudice of the inhabitants of the county, the Supreme Court will not interfere with the discretion of the trial judge, who heard the evidence, in overruling the application, unless it appears that such discretion has been palpably abused. State v. Brownfield, 83 Mo. 448; State v. Wisdom, 84 Mo. 184; State v. Burgess, 78 Mo. 235; State v. Atchley, 186 Mo. 174; State v. Thompson, 141 Mo. 414. (5) The prosecuting attorney dismissed as to the second count of the information. The first count is good. The character of the charge is not determined by the complaint filed before the justice of the peace. All that the justice is required to find is that a felony has been committed and probable cause to believe the prisoner guilty thereof. State v. Jeffries, 210 Mo. 320; State v. Sassaman, 214 Mo. 719. (6) The court permitted the State to introduce evidence of the shot fired by the defendant with the rifle. This was a part of the *res gestae.* The court very properly instructed the jury, in de-

State v. Anderson.

fendant's third instruction, that they could only consider the evidence of such shooting in passing upon the motive or intent of the defendant. (7) Novella Anderson, the wife of appellant, was a competent witness to testify to the assault made on her by the defendant, when she volunteered to testify. 1 Greenleaf on Evidence, sec. 343; Wharton, Crim. Ev., sec. 393. (8) Gladys Anderson, ten-year-old daughter of appellant and his wife, who is the prosecuting witness, was, after the preliminary examination by the trial judge, permitted to testify. The competency of a child to testify is wholly within the discretion of the trial judge. 1 Greenleaf on Evidence, sec. 367; State v. Jeffries, 210 Mo. 326.

FARIS, J.—Defendant was tried in the circuit court of Texas county on the charge of assault with intent to kill. He was convicted and his punishment assessed at ten years' imprisonment in the penitentiary. From the sentence imposed, after the usual motions for a new trial and in arrest, he has appealed.

The information, which was attacked, both by a motion to quash and a plea in abatement, and the contents of which therefore become pertinent, is, omitting caption, as follows:

George H. Scott, prosecuting attorney within and for the county of Texas, and State of Missouri, informs the court upon his oath of office that on or about the 24th day of December, 1910, at and in the county of Texas, in the State of Missouri, one James Anderson, then and there in and upon one Novella Anderson then and there being feloniously, on purpose and of his malice aforethought, did make an assault and did then and there feloniously, on purpose and of his malice aforethought, shoot and wound her, the said Novella Anderson, with a certain shotgun then and there loaded with gunpowder and leaden balls, which shotgun he the said James Anderson in his hands then and there had and held, with the intent then and there her, the said Novella Anderson, feloniously, on purpose and of his malice aforethought then and there to kill and murder against the peace and dignity of the State.

And the prosecuting attorney aforesaid for other and further complaint upon his oath of office informs the court that on or about the 24th day of December, 1910, at and in the county of Texas, and State of Missouri, one James Anderson, in and upon one Novella Anderson, then and there being, unlawfully, feloniously, on purpose and of his malice aforethought, did make an assault and with a deadly and dangerous weapon, to-wit, a shotgun, then and there loaded with gunpowder and leaden balls, which he, the said James Anderson, in both of his hands then and there had and held at and against her, the said Novella Anderson, then and there unlawfully, feloniously, on purpose and of his malice aforethought, did shoot off and discharge and with the shotgun aforesaid and the leaden balls aforesaid, then and there unlawfully, feloniously, on purpose and of his malice aforethought, did shoot and strike her, the said Novella Anderson, in and upon the left arm of her the said Novella Anderson, giving to her, the said Novella Anderson, then and there with the dangerous and deadly weapon aforesaid, to-wit, the shotgun aforesaid and gunpowder and leaden balls aforesaid, in and upon the left arm of her, the said Novella Anderson, a certain wound of the breadth of three inches and of the depth of three inches, of which wound the said left arm of said Novella Anderson is wholly and permanently disabled, with the intent then and there her, the said Novella Anderson, on purpose and of his malice aforethought to kill and murder, against the peace and dignity of the State.                    GEORGE H. SCOTT,
                                        Prosecuting Attorney.

George H. Scott, prosecuting attorney, being sworn, upon his oath states that the facts stated in the foregoing information are true according to his best information and belief.
                                        GEORGE H. SCOTT.

Subscribed and sworn to before me this 4th day of March, 1911.
                                        JOE C. STITES,
                                        Circuit Clerk.

Briefly stated the grounds urged in the motion to quash were (a) that the information was duplicitous and that two separate and distinct offenses were thereby charged, to-wit, assault with intent to kill and mayhem; (b) that the information is vague, indefinite and uncertain and does not fully inform the defendant of the charge preferred against him, and against which he is required to plead and defend himself; and (c) that the offense charged in the information is a sepa-

rate and distinct offense from that set out in the complaint which was filed before the justice of the peace. This motion to quash was overruled and defendant saved his exceptions in due form.

Defendant also, as above forecast, attacked the information by plea in abatement, which plea was bottomed upon the averred objections, in substance, (a) that no preliminary examination before a justice of the peace was accorded defendant before the filing against him of the information herein; (b) that the information was not based upon the affidavit of any witness having personal knowledge of the facts stated therein, and (c) that the prosecuting attorney has no authority to institute a prosecution for a felony by information when the grand jury is in session, or when a grand jury has been summoned and will shortly be in session. This plea was, also, by the court overruled, and defendant duly saved his exceptions to the action of the court in such behalf.

The facts as shown by the record touching this plea in abatement are that a complaint was filed by one G. T. Mires, who was the father of the person alleged to have been the victim of the assault charged. This witness had no personal knowledge of the assault, except that he came to the scene of the shooting, saw the condition of his daughter, and some four weeks thereafter, no one else acting, he filed a complaint before a justice of the peace. This complaint is full and formal. If any objection can be urged against it it may be said to be too full. It charges an assault with intent to kill with a felonious intent, closing, however, with these words: "With the intent then and there, her the said Novella Anderson on purpose and of his malice aforethought, to main [sic] and kill and murder, against the peace and dignity of the State." Upon the docket of the justice of the peace it is stated that defendant was by said complaint charged with mayhem. A preliminary hearing was

duly accorded to defendant and he was by the justice of the peace held in bail to await the action of the circuit court. Subsequent to this preliminary hearing and before the convening of the next term of this circuit court and before the impaneling of the grand jury (which term of court began and which grand jury was impaneled on the 6th day of March, 1911), the prosecuting attorney, on the 4th day of March, 1911, filed against defendant the information above set out.

Upon this state of facts several of the contentions made by defendant for a reversal are predicated.

It is also urged by defendant that his application for a change of venue should have been granted. This application was based upon the prejudice of the minds of the inhabitants of Texas county against defendant; it was verified by the statutory number of compurgators and was timely made and in all ways formal. A hearing was had by the court and numerous witnesses were called by defendant. These witnesses, some two dozen or more in number, came, as defendant avers, from all parts of Texas county. But one witness was called by the State. This witness was the assessor of Texas county, one G. T. Mires, who was the father of the woman alleged to have been shot. His testimony consisted largely in a denial that he had stirred up public opinion against defendant while on his rounds through the county attending to his official duties.

The testimony, when fairly reviewed, indicates that immediately after the occurrence of the shooting, which took place on December 24, 1910, some feeling had existed. The facts of the shooting, or the alleged facts thereof, were printed in the various newspapers of Texas county, and through these newspaper articles, and from conversations and rumors over the telephone, the news of the shooting very quickly obtained wide notoriety. The witnesses were unanimous in saying that the talk about which they testified and the feeling which they said formerly existed, came wholly,

except in the immediate vicinity of the crime, from the sources stated. It was the consensus of opinion of these witnesses that while, as some of them stated, there had been in some communities, shortly after the crime occurred, some little talk of mob violence, this talk had "died down" since the shooting and before the trial, and that no excitement now prevailed touching the matter. All of these witnesses stated that they personally could give defendant a fair trial and would be governed by the evidence wholly and not by the rumors and newspaper reports, upon which their opinions in the case were bottomed.

As a fair example of the testimony of all of these witnesses, excerpts from the testimony of a number of them as fairly illustrating the condition of matters, is appended:

The witness Volmer, who was a newspaper editor, says that at the time of the shooting there was some little talk of a mob, but that the feeling against the defendant seemed to have "died down" completely.

The witness Lyles, who was also a newspaper man, says that at the time of the shooting "a great many did not express any opinion, but all who did express an opinion to me said he was guilty." This witness further says that he had heard talk since this court began, but that "no feeling was expressed against defendant, nothing of the kind."

Witness Hofrath, who also seems to have been a newspaper man, says that at the time the offense happened most of the people considered the defendant guilty; that he had not heard it discussed since he had been here at court; that there was no expression of violence against him; that he did not believe the reports and rumors would have any weight with him in the trial, and that he had heard perhaps twenty-five or thirty men out of some three hundred voters in his neighborhood express themselves.

The witness Threasher, who seems to have been a very intelligent man, and formerly a judge of the county court, testified that at the time of the occurrence of the offense nearly everybody thought defendant was guilty; that he heard no other opinion expressed; that he had not heard anybody express themselves lately, but a year ago they thought he was guilty; that he heard perhaps fifty or a hundred people, out of some thousand voters, with whom he was acquainted, express their opinion, but that he did not hear anyone say he could not have a fair trial, or talk about mob violence, and that all of these opinions were based on newspaper reports.

The witness Curran testified that from what the people saw in the papers they thought defendant was guilty. That he had talked to some twenty voters out of 165; that these men expressed no feeling and talked of no mob violence; that they just thought he was guilty; that he had heard no one say that defendant could not have a fair trial.

Witness Turner said in substance that the people in Dade township talked about the matter a little bit; that he never heard very much talk about it; that since he had been attending court he had heard but one man mention it, and that this man had only said that if defendant was guilty "he ought to be nibbled to death by young ducks."

We have not attempted to give the exact language of these witnesses, only the fair substance of what they said, but the above excerpts are fair samples of what all the witnesses called by defendant said.

The prosecuting witness, Novella Anderson, was the wife of defendant James Anderson, having been married to him some twelve years before the shooting, and at the time thereof they were living together on a little farm some three miles north of Success, a small hamlet in the northwest part of Texas county. On the morning of December 24, 1910, while Novella An-

derson was engaged in preparing breakfast, the defendant, her husband, came into the kitchen, and so far as the record shows, without a word, took his double-barrel shotgun from a rack, which rack was just inside of the kitchen door, and fired twice at his wife. The first shot grazed her head, cutting off part of her hair, and a few of the shot striking and entering her head. Defendant again fired, striking his wife on the left arm near the shoulder and practically tearing her arm from her body. She then ran or fell out of the kitchen door, crossed the yard and ran out the gate; defendant immediately and hastily procured a small 22-calibre rifle and ran after his wife; caught up with her some forty yards away, and, holding her by the uninjured arm, again shot her, with the rifle. This shot entered the right side of her head, some two inches above her right ear, ranged downward, passing, as the physician said, through the brain substance and into her left shoulder. Defendant returned to the house, procured some more shotgun shells, and his double-barrel shotgun, and was returning to the place where his wife was lying unconscious, when he was met by his wife's sister and the latter's husband, who prevailed on him to put up the gun and shoot no more. He did not deny the shooting or speak of it further than to say that he was sorry for it.

Upon the trial the wife of defendant, who was the assaulted person, was offered as a witness; defendant objected and was permitted, at his request, by the court, to ask certain qualifying questions, which questions developed the fact that the prosecuting witness then on the stand was the lawful wife of defendant and had been married to him twelve years. Upon being asked whether she desired to prosecute and testify against her husband, she answered unequivocally that she did.

No testimony whatever as to the facts of the shooting was offered by defendant; nor did he even take the

stand; but he did offer testimony as to his prior good reputation.

Upon the trial one Gladys Anderson, the daughter of defendant, as also the daughter of the prosecuting witness, was offered by the State. The defendant objected on account of her youth. The proof showed that she was ten years of age; that she became ten years of age on the 17th of August preceding; that she went to school, attended church and Sunday school and upon her *voir dire* examination stated that she knew it would be wrong to tell in her testimony that which was not true, and that the oath she had taken in effect obligated her to tell the truth.

As a result of the shooting and wounding the prosecuting witness lay at the point of death for many days and was compelled to have her left arm amputated.

The above statement of facts we deem sufficient to make clear the points urged by defendant.

I. The first count of the information, the same being the one upon which defendant was convicted, and with which therefore we are here alone concerned, seems to us to be sufficient in every respect, and to accord in all ways with the approved forms. [Section 4481, R. S. 1909; State v. Williams, 191 Mo. 205; State v. Barton, 142 Mo. 450.] If the weapon alleged by the indictment to have been used is such as is judicially noticed by the courts to be deadly, then the information need not allege the use of a deadly weapon. [State v. Williams, supra; State v. Prendible, 165 Mo. 329.] The motion to quash was properly overruled.

**Information.**

The defendant contends that the information in this case was bad when attacked by his plea in abatement, which plea he avers should have been sustained, for the reason that the record shows that this information is based upon the affidavit of G. T. Mires, who it

is admitted upon the record was not present and had no personal knowledge of the actual facts of the shooting.

An examination of the first count of the information upon which the case was tried (the second count having been before trial dismissed), discloses that this is an error. The record does show that a complaint as a basis for a preliminary hearing was issued by the justice of the peace, which complaint was made by said Mires, but the record also shows that the information was upon the oath of office of the prosecuting attorney, and that in addition to being filed under his oath of office, there was appended thereto his affidavit. Under the statute this is all that was necessary. This is one of the three methods of verification of informations permitted by law and we hold that all was done that the law requires to be done. [Sec. 5057, R. S. 1909; State v. Bonner, 178 Mo. 424; State v. Lawhorn, 250 Mo. 293.]

II.  It is insisted by defendant that he was entitled to a preliminary hearing and that no preliminary hearing was granted to him. We have labored in the statement to show the facts correctly. These facts show that a preliminary hearing before a justice of the peace was accorded to the defendant. Since, however, he was not charged with a capital offense, under the law as it existed at the time of this prosecution, he was not entitled as a matter of law, or as a matter of statutory right, to a preliminary hearing. [State v. Schenk, 238 Mo. 429.] In the present case, however, this contention of learned counsel for defendant is based upon a refinement of technical logic. The justice of the peace, without any legal excuse for so reciting, erroneously styled this prosecution as instituted before him by the complaint of said G. T. Mires, as a "prosecution for mayhem," when as a matter of fact neither

*Preliminary Hearing.*

the allegations of the complaint nor the proof adduced justified the justice in so labeling or styling the case. So defendant says he was accorded a preliminary hearing on the charge of mayhem and prosecuted by information without a preliminary hearing thereon for an assault with intent to kill. The prosecuting attorney is not bound by the name with which a justice of the peace labels an offense when he dockets a complaint.

We hold, first, that the defendant was duly accorded, under the facts here, a preliminary hearing; and, second, that he was not entitled to a preliminary hearing in this case as a matter of law, and therefore for both or either of the two reasons we are constrained to disallow this point.

III.  Defendant complains that since the grand jury had been called for March 6, 1911, and since the circuit court of Texas county would convene in session on that date, it was an illegal invasion of his rights for the prosecuting attorney to file against him the information set out herein two days prior thereto, that is to say, on March 4, 1911.  We are unable to see the force of this contention.  Since the amendment of our Constitution permitting prosecutions for felonies to be instituted either by indictment or information, the two remedies have been in this State concurrent ones.  The prosecuting attorney had the right, since defendant had been recognized to await the action of the circuit court, either to file an information against him as he did, or to await the convening of the grand jury and to submit the matter of indicting him to that body.  The prosecuting attorney elected to proceed by information.  This he had the right to do, the methods of prosecution being now concurrent.  [State v. Harvey, 214 Mo. l. c. 408; State v. Bonner, supra.]

Right to File Information.

IV. Defendant contends that since the person whom he shot was his wife, that she was, though a willing witness for the State, incompetent to testify against him. We need cite no authorities showing the usual correctness of this contention of the defendant; nor need we, we opine, cite any authorities showing the error thereof upon the facts in the case at bar. The wife of the defendant was the injured party; she is the one who had been three times shot by the defendant. Her competency then in this case arose from the well-known exception at common law, that where the wife is the injured person she may testify against her husband, *ex necessitate.* [1 Greenleaf on Ev. (16 Ed.), sec. 343; 1 Wharton Crim. Ev. (10 Ed.), sec. 393.] The contention is somewhat novel and so far as we know has never been seriously doubted before. If doubted, however, it is well-settled against the defendant's contentions. [State v. Pennington, 124 Mo. 388.]

*Wife as Witness.*

It is also contended that the witness Gladys Anderson, who had attained the age of ten years, some three months before the trial, was incompetent by reason of her non-age. This question, the age of the witness considered, is, by strong implication at least, settled by our statute. [Sec. 6362, R. S. 1909; State v. Brown, 209 Mo. l. c. 418.] Besides, if the statute does not settle it, she was before the learned trial judge; he had the opportunity of passing upon her intelligence from her appearance and from her manner upon the stand; he examined her, or permitted her to be examined at sufficient length upon her *voir dire* as to fully advise himself touching her competency. He decided that she was competent. From this distance her testimony would indicate that he was correct and that he did not violate that discretion which the law lodges in him and gives him as to witnesses under the

*Ten-year-old Child as Witness.*

252 Mo.—7

age of fourteen years.  [State v. Jeffries, 210 Mo. l. c. 326.]

At common law an infant over the age of fourteen years was presumed to have sufficient intelligence, discretion and understanding to testify as a witness, but if under that age no such presumption was indulged (1 Greenleaf on Ev. (16 Ed.), sec. 367); and he who offered a witness under fourteen years of age had put upon him the burden of proving capacity and therefore competency, before such witness was allowed to testify.  It is reasonably clear that the effect of our statute (Sec. 6362, R. S. 1909) is by strong implication at least to lower the age of presumed capacity and competency from fourteen years as at common law, to ten years, leaving the common law rule in force as to those under ten years of age.  For the statute says: "The following persons shall be incompetent to testify . . . a child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly."  [State v. Brown, 209 Mo. 413.]

It is also urged that the court erred in permitting witnesses to testify as to a shooting both with a shotgun and a rifle, when the information charged a shooting with a shotgun only. **Another Offense: Res Gestae.** This was a prosecution for assault with intent to kill.  The facts clearly show that the shooting with the rifle was a part of the *res gestae.*  The defendant had emptied the shotgun at his wife, shooting her both in the head and in the arm, and by his last shot practically tearing her arm from her body.  She ran; the defendant hastily and immediately began hunting for a rifle; found it, and pursued his fleeing wife to a point just outside of the yard gate, where he caught up with her forty yards only away from the original assault upon her, seized her by her uninjured arm, and again shot her with a rifle.  The court by an instruction especially limited

State v. Anderson.

the testimony as to the shooting with a rifle to the
question of the intent on the part of the defendant,
that is to say, as to whether this circumstance indi-
cated on defendant's part an intent to kill and murder
his wife.  It seems to us that it is too clear for argu-
ment that it was a part of the *res gestae*.  Being then
a part of the *res gestae* it was admissible, notwith-
standing the recital of it might have tended to show
the commission against his wife of another crime.
That was defendant's misfortune, if such was its ef-
fect.  If the testimony was admissible, the fact that it
might have shown the commission of another offense
is no objection against its admission.  It comes in as
a part of the *res gestae* regardless of this contention,
and that it was a part of the *res gestae* under the facts
here is too plain for discussion.

V.  Defendant strenuously complains that the
court erred in refusing to grant him a change of venue
upon his application and upon the showing
made by him.  This is the most serious con-
tention that we find contained in the record.

**Change of Venue.**

We have set out some of the testimony adduced
by the defendant upon his application, and have gone
over the record with much pains.  The testimony
shown is as fair an example of what all of the wit-
nesses testified as we have been able to obtain from
the record.

Reverting to the well-settled canons of decision
as the basis for a logical discussion of the point in-
volved, we find that the matter of granting a change
of venue is bottomed upon the sound discretion of the
trial judge.  It is only when the trial court plainly
and palpably violates this discretion to such an extent
as to preclude to a defendant a fair trial, that this
court will interfere.  [State v. Atchley, 186 Mo. 174;
State v. Wisdom, 84 Mo. 177; State v. Burgess, 78 Mo.

l. c. 235; State v. Albright, 144 Mo. l. c. 642; State v. McCarver, 194 Mo..l. c. 734.]

The excerpts which we quote in our statement of this case show that at the immediate time of the commission of this offense there was considerable feeling against defendant and some little talk in a few neighborhoods of mob violence; and the record discloses that this condition of the public mind was brought about by reading the newspaper reports of defendant's most heinous offense. The case was tried eleven months after the offense was committed, and the witnesses are practically unanimous in saying that whatever excitement and feeling had existed immediately following the crime, had completely died down. The witnesses who were examined upon this application were also practically unanimous in saying that while they were induced by the newspaper reports and by conversations over the telephone to believe in the guilt of the defendant, yet their feelings were such as that they would consider the case, if they were jurors, upon the evidence and would decide it from the evidence offered and not from the rumors and reports they had heard. So far as the record discloses no difficulty whatever was experienced in obtaining a jury. No objections were made or saved, to the jury as a whole or to any juror, and if a single member of the *venire* called for the trial of this case disqualified himself, or was objected to on account of bias or prejudice, the record is absolutely silent about it. It is the misfortune of the defendant, if the heinousness of his offense and the absolute certainty of his guilt, which he himself does not deny, extenuate or excuse, produced for a time a strong sentiment and feeling against him. It is likely, and extremely probable, that immediately following the commission of this crime, public feeling in Texas county where defendant was tried was such as to prevent his having a fair trial. But it is fairly clear from the record that this feeling had died down;

that the calm judgment of the people had prevailed over their temporary emotions and that they were disposed at the time he was tried, to permit the law to take its course. It is difficult to conceive of any jury, anywhere, the facts of this shooting considered, acquitting defendant, or giving him less than the maximum penalty prescribed by the law. It is indeed a regrettable fact that the law did not permit a more severe penalty. Considering all these facts, particularly the length of time that had elapsed since the shooting, and in which it is apparent that the mob spirit, if any existed, and the public excitement caused by this crime had died down, it is not clear enough upon the record for us to say that the learned trial judge so palpably abused the discretion with which the law vested him, as to cause us to interfere, the nature of the offense here and the facts of this case considered. [State v. Barrington, 198 Mo. 23; State v. Rasco, 239 Mo. 535; State v. Kring, 11 Mo. App. 92.]

The facts in this case are to be distinguished from the facts in the case of State v. Goddard, 146 Mo. 177. While in the instant case the State offered no countervailing testimony, yet the cross-examination of the witnesses offered by the defendant showed such a condition of facts as to take it out of the rule enunciated in the Goddard case, and the further fact materially aids that in the instant case no defense whatever beyond the fact of previous good character, is offered by the defendant. Upon the trial he offers neither denial nor excuse. Upon such a state of facts, in addition to our opinion that upon the proof the learned trial judge did not abuse his discretion, we are aided in reaching this conclusion by the view that defendant was in no wise harmed by the refusal of his application, and we therefore rule this point against him.

We have gone over all points raised by learned counsel for defendant. We have examined the record

and finding no substantial error affecting the material rights of defendant, we are constrained to order that this case be affirmed; and it is so ordered. *Brown, P. J.,* and *Walker, J.,* concur.