State v. Jones.

STATE OF MISSOURI, Respondent, *vs.* THOMAS JONES, Appellant.

1. *Indictment—Instruction to convict of murder or acquit.*—Where the evidence is of a character to authorize it, the court may properly give an instruction that the jury must either convict the prisoner of murder in the first degree, or acquit him.

2. *Practice, criminal—Murder—Intent, continuance of, for what length of time necessary.*—If homicide is committed, not in the heat of passion or with lawful provocation, and the prisoner deliberately and with malice aforethought intend the killing for any length of time beforehand, no matter how short, he is guilty of murder in the first degree.

3. *Instruction commenting on evidence.*—An instruction singling out a portion of testimony and commenting thereon is improper.

4. *Murder—Uncorroborated testimony of accomplice, how to be received by juries.*—The testimony of those abetting and encouraging murder in relation thereto, when uncorroborated by that of others not implicated, although admissible, should be received with great caution by the jury; and they should not convict on such testimony alone, unless satisfied of its truth.

5. *Instruction—Evidence—Refusal of.*—An instruction not based upon evidence is properly refused.

6. *Witness—Recalling of, for purpose of impeachment.*—A party after cross-examining a witness of the other side may by permission of court recall and question him for the purpose of impeaching him, and afterward introduce other testimony to that end. He does not by so recalling him make the witness his own.

7. *Witness called for particular purpose—Cross-examination of.*—*Semble*, that a witness examined on any point may be cross-examined by the other side touching all matters pertaining to the case.

8. *Jury—Competency of juror.*—The fact that he is father-in-law of the prosecuting attorney does not render a juror incompetent.

*Appeal from New Madrid County Circuit Court.*

*Riley & Conran*, for Appellant, cited: Sess. Acts. 1875, 78; State vs. Roberts, 15 Mo. 28; 1 Greenl., § 380; Gearhart vs. Smallwood, 5 Mo. 542; 1 Greenl. Ev., §§ 110, 111, 363, 380, 381.

*J. L. Smith, Att'y Gen'l*, for Respondent, cited: Wagn. Stat. § 14, 1103; 1 Grah. & Wat. New Trials, 35, 36–40; Steele vs. Maloney, 1 Minn. 347; Thrall vs. Smiley, 9 Cal. 529; Forsythe vs. State, 6 Ohio, 9; 1 Mo. 527; 16 Mo, 385; 31 Mo. 361; State vs. Byrne, 24 Mo. 151; State vs. Starr, 38 Mo. 273; State vs. Joeckel, 44 Mo. 236; State vs. Schoenwald, 31 Mo.

153 ; State vs. Ross, 29 Mo. 32 ; 31 Mo. 361 ; Turner vs. Baker, 42 Mo. 16 ; State vs. Harrold, 38 Mo. 496 ; State vs. Smith, 31 Mo. 566 ; State vs. Wissmark, 36 Mo. 592 ; Beale vs. Cullan, 31 Mo. 258 ; State vs. Linney, 52 Mo. 41.

HENRY, Judge, delivered the opinion of the court.

At the September term, 1874, of the New Madrid Circuit Court, defendant and George Horner, Charles Motes, William Ewill, Walter Scott Jacobs and James F. Russell were jointly indicted for the murder of Frank O'Bannon. At the following March term the cause was continued to the ensuing September term, but at an adjourned term of said March term, held in July, 1875, by consent of parties, the order of continuance was set aside, and a jury sworn to try the case, which, failing to agree upon a verdict, was discharged, and both parties consenting another jury was summoned and a trial had, which resulted in a conviction of defendant for murder in the first degree.

Defendant filed his motion for a new trial, alleging as reasons why it should be granted : 1st, that the verdict was against the law and the evidence ; 2d, that the jury was improperly impaneled, in that Samuel T. Davis, one of the attorneys representing the State, selected the panel to be returned to the court ; 3d, for misbehavior of the jury in allowing persons hostile to defendant to talk with them, and in their presence, in regard to the case ; 4th, because the court erred in giving instructions for the State, Nos. 1, 2, 3, 4 and 5, and in refusing instructions Nos. 5 and 6 asked for by defendant.

The motion for a new trial was overruled, and judgment entered in accordance with the verdict, from which defendant has appealed to this court.

The second and third grounds alleged in the motion for a new trial are allegations of facts, not supported by any proof whatever, and will therefore receive no further notice.

The instructions for the State were as follows :

1. "Under the law and evidence in this case, the defendant, Jones, is guilty of murder in the first degree, or nothing, as you shall believe from the evidence."

2. "The defendant, Thomas Jones, is charged with murder in the first degree, by having wilfully, deliberately, premeditatedly and of his malice aforethought, killed one Frank O'Bannon, by shooting him with a shot gun. The word 'wilfully,' as here used, means intentionally, and not accidentally ; the word 'deliberately' means in a cool state of blood, that is, not in a heated state of the blood caused by lawful provocation, and the word 'premeditatedly' means thought of beforehand, any length of time, however short. Therefore, if you believe that defendant, Thomas Jones, in malice, did wilfully or intentionally shoot and kill Frank O'Bannon with a shot gun or pistol, and that he did so without being in a heat of passion, caused by a lawful provocation, and that he thought of killing said Frank O'Bannon beforehand any length of time, however short, then he is guilty of murder in the first degree, and the jury should so find."

3. "Although it is alleged in the indictment that the defendant, Thomas Jones, fired the fatal shot, and that George Horner and others were present, aiding, abetting, helping and assisting him to kill and murder Frank O'Bannon ; yet, if the jury should believe from the evidence that George Horner was, in fact, the person who really fired the fatal shot, and that defendant, Jones, was present, aiding, abetting, assisting and helping said George Horner to kill the said Frank O'Bannon, as aforesaid, then, and in that case, said Thomas Jones is still guilty of murder in the first degree, and the jury should so find."

4. "It is immaterial, in this case, whether the shooting was done with a pistol or a shot gun, or both."

5. "Although the jury may believe that Motes did state to Edmonson the next morning after the killing, that 'he emptied his pistol at the negro last night,' and although you may believe that Motes was wrongfully in company with Jones and others at the shooting of Frank O'Bannon, still, if the testimony of Motes is corroborated by other witnesses, you are at liberty to give his evidence full credit."

The first instruction asked by the defendant was, substantially, that the burden of proof was on the State. The second, that if any witness had wilfully sworn falsely to any material fact, the

jury might disregard his testimony. The third was the usual one in regard to reasonable doubt, and the fourth, that if the jury found from the evidence that, at the time of the shooting Jones was not present, but at another place, they should acquit.

The 5th asked by defendant and refused, was as follows: "The testimony of parties aiding, assisting, encouraging and abetting the crime, is admissible ; yet their evidence, when not corroborated by the testimony of others not implicated in the crime, as to matters material to the issue, ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth, before they should convict defendant on such testimony."

The 6th instruction asked by defendant and refused, was, that if the jury believed from the evidence that at the time Frank O'Bannon was killed, said defendant was present, but did not participate in the killing, aid, assist, encourage or abet in the same, they should acquit said defendant.

The widow of deceased testified that a number of men came to her house, and two of them entered it and took her husband out, and soon after she heard reports of fire-arms, and next morning found her husband dead. She did not recognize the men she saw at her house. The State then introduced Wm. Ewill and Charles Motes, in the order here named, and defendant objected to them as incompetent, because jointly indicted with Jones, but the objection was overruled, and it is sufficient to say that in that there was no error. Their testimony was direct to the killing of O'Bannon by Jones and George Horner, witnesses both being present.

Defendant cross-examined these witnesses, and after the State rested, and defendant had examined several witnesses in chief, he recalled Motes and asked him the following question: "Did you, or did you not, on Tuesday during the last March term of our circuit court, state to William Gooch, in the Main street of New Madrid town, that your lawyers advised you to turn State's evidence against Mr. Jones, and that you were going to do so, because Mr. Jones had threatened you, or words to that effect?"

To which witness answered : "I did not make such a statement to Mr. Gooch, or to any one."

Mr. Gooch was then called by the defense, and was asked if Motes did not, at the time and place named in the question propounded to Motes, tell him that his (Motes') lawyers had advised him to turn State's evidence, and that he was going to do so, as Mr. Jones had threatened him, or words to that effect? The State objected to the witness answering the question, and the objection was sustained, and the ruling excepted to.

The first instruction given for the State is sanctioned by repeated decisions of this court. (State vs. Byrne, 25 Mo. 151 ; State vs. Starr, 38 Mo. 273 ; State vs. Joeckel, 44 Mo. 236 ; State vs. Schoenwald, 31 Mo. 147.) The evidence warranted the instruction. If the witnesses for the State were to be believed, defendant was guilty of murder in the first degree. If they were unworthy of credit, there was no evidence to convict him of any crime. On the evidence a conviction for murder in the second degree, or manslaughter in any degree, would have had no evidence to support it.

The second instruction is substantially correct, and defines the words "wilfully, deliberately" and "premeditatedly" as heretofore uniformly defined by this court. (State vs. Holme, 54 Mo. 155.)

We have discovered no error in the other instructions except the fifth, to which it may be objected that it is a comment upon specific portions of the evidence. It is not, perhaps, such an error as would justify a reversal, if the case had been in all other respects fairly tried ; but as the judgment will be reversed for reasons hereinafter given, we call attention to the impropriety of such an instruction. We do not mean to be understood that a case might not be presented in which, for this error alone, the judgment would be reversed, but confine the remark to the instructing and the case we are considering.

The 5th instruction asked by defendant should have been given.

The witnesses for the State who testified directly to the shooting of O'Bannon by defendant, were persons jointly indicted with

him. The degree of credit to be given to the testimony of an accomplice is a matter exclusively for the jury to determine. They may convict on his evidence without any corroboration of his statements, but jurors, having a proper appreciation of the responsibility resting upon them, would observe great caution in weighing his testimony, and hesitate to convict one of murder on the uncorroborated testimony of an accomplice in the alleged crime, and probably testifying under a promise of pardon. Mr. Greenleaf says, Vol. 1, § 380 : "It has sometimes been said, that they (juries) ought not to believe him (an accomplice) unless his testimony is corroborated by other evidence ; and without doubt great caution in weighing such testimony is dictated by prudence and good reason. But there is no such rule of law ; it being expressly conceded that the jury may, if they please, act upon the evidence of an accomplice without any confirmation of his statement. But, on the other hand, judges in their discretion will advise a jury not to convict of felony upon the testimony of an accomplice alone, and without corroboration ; and it is now so generally the practice to give them such advice, that its omission would be regarded as an omission of duty on the part of the judge."

It being the law, as Mr. Greenleaf in the above paragraph states, that one may be convicted of a felony on the uncorroborated testimony of an accomplice, makes it the more necessary that juries should be properly cautioned by the court in regard to such testimony.

The sixth instruction asked by defendant was properly refused. There was no evidence, whatever, that if present, defendant did not participate in the killing of O'Bannon. There was evidence for defense conducing to prove an *alibi*, and the court gave a proper instruction for that aspect of the case, but all the other evidence, whatever credit may be given to it, was that defendant was present participating in the homicide.

The court erred in refusing to permit Gooch to answer the question propounded to him by the defense. A proper foundation had been laid for it. But it is insisted by the State that when defendant recalled Motes he made him his own witness and

could not impeach him.   We suppose that this was the reason for the exclusion of the testimony.   We do not so understand the law.   It is but a continuation of the cross-examination of the witness by permission of the court.   The testimony sought to be elicited was not evidence in chief for the defense, of the facts tending to prove his *alibi*, or any other facts directly exculpating him, but only went to the credit of the witness for the State, and the question propounded to Motes was legitimate cross-examination.   "Whether, when a party is once entitled to cross-examine a witness, *this right continues through all the subsequent stages of the cause*, so that if the party should afterwards recall the same witness to prove a part of his own case, he may interrogate him by leading questions, and treat him as the witness of the party who first adduced, is also a question upon which different opinions have been held.   Upon the general ground on which this course of examination is permitted at all, namely, that every witness is supposed to be inclined most favorably towards the party calling him, there would seem to be no impropriety in treating him, throughout the trial, as the witness of the party who first caused him to be summoned and sworn."   ( Greenl. Vol. 1, § 447.) It will be observed that Mr. Greenleaf thinks that the better doctrine is, that even where one calls the witness of his adversary to make out his own case, he should still be treated as the witness of the party first calling him.   Without going so far, we think the court erred in refusing to permit Gooch to answer the question asked him.

Other points were made for defendant in his counsel's brief which it is unnecessary to notice at length, inasmuch as they relate to the manner of summoning the panel of jurors, and to the refusal of the court to exclude from the panel one whom defendant thought there was sufficient ground for excluding.   It is sufficient to say, that the oath taken by the sheriff and his deputies was the proper one, and the fact that La Forge was the father-in-law of the prosecuting attorney did not render him incompetent as a juror.   It may be well to suggest that before another trial, if either defendant desires a separate trial, a proper order

of severance should be made by the court. No such order appears in the record, and yet it appears that Jones was tried separately.

Judgment reversed and cause remanded, all the judges concur.