ANNA FEY, (Relator) Appellant, v. FRED C. WOERMANN ET AL., Respondents, FRED HOUSKA, SR., ET AL., Defendants, No. 41583—230 S. W. (2d) 681.

Division One, June 13, 1950.

*J. E. Patton* for appellant.

*James E. Crowe* and *Frank A. Neun* for respondents Fred C. Woermann, F. Ray Leimkuehler, Frank E. Lawrence, W. S. Milius and E. W. Klorer, Constituting the Board of Adjustment of City of St. Louis, and *Thomas & Busse* for respondents Fred Houska, Sr., and Charles D. Barth.

CLARK, P. J.—This is an appeal by relator Fey from a judgment of the circuit court affirming an order of the respondent, Board of Adjustment of the City of St. Louis, in granting a permit to respondent Houska to erect a building on real estate owned by him at the northeast corner of Cherokee Street and Oregon Avenue in St. Louis.

The Houska property consists of three 25 foot lots fronting on Cherokee Street for a distance of 75 feet and extending north along the east side of Oregon Avenue a distance of 100 feet, including a private alley. The Fey property is a 25 foot lot, adjoining the Houska property on the east, fronting on Cherokee Street and extending north a distance of 100 feet including a private alley. Mrs. Fey lives in a small house on her lot. The house, more than fifty years old, lies about 9 feet north of Cherokee Street and is built up to the west line of her land which is the east line of the Houska property.

All buildings, except that of Mrs. Fey, on both sides of Cherokee Street in the block between Oregon and California avenues, extend to the line of Cherokee Street. Immediately east of the Fey property is a store building built up to her east property line and to Cherokee Street.

In January, 1949, Houska applied to the Building Commissioner for a permit "To erect one-story commercial building of brick and concrete blocks, 75 x 88 feet, at 2823 Cherokee Street (C. B. 1511),

or super-market building to extend to property lines on *east, south and west,* leaving 3 feet on `north between building and private alley, 6 feet established line on Cherokee, where three residences have been wrecked. Building Division denied permit because of encroachment on commercial zone 'C' area, in accordance with the plans and specifications filed on the ———— day of ———————— herewith. * * *''

The Commissioner refused the permit. Houska appealed to the Board of Adjustment which overruled the Commissioner and granted the permit, stating:

''This appeal was granted on the grounds that, inasmuch as the vast majority of the property in this district is occupied by commercial structures that do not observe front or side yard lines, to require them in this case would not produce eventual uniform development which would be in the interest of the entire district.

''This permit is granted, however, on condition that appellant will defray any expense involved in under-pinning or shoring-up or other protection required.''

Houska began excavating on his land. At first Mrs. Fey made no objection, but ▮▮▮▮ entered into negotiations for the sale of her property to him. More than once the Board of Adjustment adjourned its hearing to give the parties an opportunity to compromise. The parties failing to agree upon a sale price, Mrs. Fey brought the instant suit in certiorari to review the action of the Board of Adjustment, for a restraining order and for general relief. At the time of the trial Houska had completed his one story brick market building, extending it to his east line and to the line of Cherokee Street. At the conclusion of the trial, the circuit court entered judgment quashing the writ of certiorari, dismissing the action at the cost of relator, Mrs. Fey, and affirming the order of the Board of Adjustment in all respects except the following language in that order was deleted:

''* * * however, on condition that appellant will defray any expenses involved in under-pinning and shoring up or other protection required for the property of Mrs. Fey at 2819 Cherokee, '' * * *.

From the judgment of the circuit court, Mrs. Fey has appealed.

The Houska property is corner property and, under the zoning ordinances, is in a ''Commercial Zone and a 'C' Height and Area'' district.

Appellant's brief states that there are two questions which could rule this case, to wit: (1) Has a front yard building line been imposed by the applicable ordinances upon a commercial use property located in a ''C'' Height and Area District; and (2) if so, may the Board of Adjustment authorize the waiver of such front yard requirement on the ground that a refusal to do so would not be in the interest of the entire district.

Appellant also says that the circuit court erred in deleting from the Board's order the following language, "however, on condition that appellant [Houska] will defray any expenses involved in under-pinning or shoring up or other protection required for the property of Mrs. Fey at 2819 Cherokee."

We need spend little time and space in discussing this last assignment. Houska either was or was not entitled to a permit to erect a building, and the Board was without power to attach to the issuance of the permit a condition subsequent that he defray any damage he might cause to adjoining property. The deleted clause was mere surplusage, adding nothing to the legal duty of Houska to take all proper precaution in the erection of his building.

Respondent Houska's brief states his position substantially as follows: the zoning ordinances, properly interpreted and applied to the facts of this case, do not impose a front yard requirement for his building; but, even if they do make such requirement, the Board had power to waive the same under subsection 5 of section 16 of Ordinance 35003, as amended by Ordinance 35009. Further, that appellant Fey, by her acquiescence in the building of the store adjoining her property on the east up to the street line and up to her property line, and to other similar construction in the whole block, is not entitled to equitable relief.

The parties disagree as to the proper construction of the zoning ordinances and as to the particular provisions which are applicable to the facts of this case.

The ordinance provisions upon which appellant relies are as follows:

In Ordinance 35003 [enacted in 1926] as amended by Ordinance 35009; section 9, defining Height and Area districts; section 12, "Where 25 per cent or more of all property according to front feet on one side of a street between two intersecting streets *at the time of the passage of this ordinance* is built up with buildings, a majority of which have observed or conformed to a mean [average] front yard line with a variation of not more than six feet, no building shall hereafter be erected or structurally altered so as to project beyond such mean [average] front yard line." Section 15, subsection L: "A front yard shall not be required where the entire frontage of a street between two intersecting streets is wholly within a Commercial, Industrial or Unrestricted district." [Appellant points out that before respondent's permit was issued this subsection was amended by Ordinance 41414 by omitting the word "Commercial".]

In Ordinance 41386 appellant cites certain provisions requiring front, side and rear yards for buildings in a C Height and Area District.

In an effort to show that the block in which respondent's building is located is governed by the front yard requirement contained in Section 12 of Ordinance 35003 above quoted, appellant introduced oral evidence that yards were in front of more than 25 per cent of the buildings in the block at the date of the ordinance in 1926. Appellant also claims that Houska admitted a front yard line had been established by stating in his petition for review of the Commissioner's order "6 feet established line on Cherokee, where three residences have been wrecked."

In opposition to appellant's evidence, respondents offered an official plat which does not show a front yard situation in the block in question.

However, if it be conceded that a front yard line was established in 1926, it does not follow that the same must now be observed under all circumstances and conditions. As we said in the recent case of Fairmont Investment Company v. Woermann, 357 Mo. 625, 210 S. W. (2d) 26, l. c. 29, "Upon examination we find nothing in the zoning ordinances which requires the perpetual maintenance of the front yard building line which was established when any building was originally erected."

The zoning ordinances make certain exceptions to front yard requirements in Commercial Districts, one such provision which we think applicable to the facts here is contained in Section 1, subsection M, of Ordinance 41414 which reads as follows:

"M—Where all of the frontage on one (1) side of a street between two (2) intersecting streets is wholly within a Commercial, Industrial or Unrestricted District, front yard lines herein required on corner lots, and adjacent to any residence or multiple dwelling districts on intersecting streets, shall be waived for the first one hundred (100) feet of lot depth from the corner, beyond which point the front yard line shall set back at an angle of eleven and one-half (11 ½) degrees one (1) foot for each five (5) feet to the point of intersection with the established front yard line on the intersecting street; however, where the rear of such corner lot abuts on an alley this provision does not apply."

This provision seems to authorize a waiver of a front yard requirement as to Houska's property which is a corner lot and located in a Commercial District. The right to such waiver is not destroyed by the last clause of subsection M, which refers to a corner lot which abuts on an alley, for that means a *public* alley and not the private alley or driveway at the rear of the Houska property. [Sec. 4—Ordinance 43114.]

Section 172 of Ordinance 41386 does not require the Houska property to have a rear yard for that provision applies only to interior lots. Nor is a side yard required unless a rear yard is also required.

[Ordinance 41386, section 161, par. 36; also, State ex rel. Winkley v. Welsch (Mo. App.) 131 S. W. (2d) 364.]

Appellant strongly relies upon our decision in Fairmont Investment Company v. Woermann, 210 S. W. (2d) 26. Respondent also quotes from that case, which when carefully read, we think sustains respondent's position in the instant case. The facts in that case were that the appellant Investment Company owned a corner lot upon which was a hotel building set back some distance from the street in front. This property was zoned as being in a Commercial Use District and in a D Height and Area District. Immediately west of the hotel in the same block were nine residences, zoned as in a Residence Use District and in an A Height and Area District. These residences were set back from the street in front the same distance as was the hotel. The Investment Company applied for a permit to extend its building to the street line. The Building Commissioner refused the permit and was sustained by the Board of Adjustment because the hotel when constructed in 1923, "observed the building line that had been observed by all property to the west for a distance of more than 600 feet [the nine residences], and to permit the erection of the new structure out to the sidewalk line * * * would have the effect of vitiating the purposes of the zoning ordinances, i. e., the protection of property in the interest of promoting public safety, health, convenience, comfort, prosperity and general welfare as contemplated in section 20 of Ordinance 35003 as amended by Ordinance 35009." The circuit court entered judgment affirming the order of the Board. On appeal we reversed the judgment and remanded the case with directions to issue the permit to the Investment Company. We held that the zoning ordinances do not make any requirement for a front yard building line for property located in a D Height and Area District; nor do the ordinances require "the perpetual maintenance of a front yard building line which was established when any building was originally erected." We further held that, as the ordinances do not impose a front yard building line requirement on property located in a D Height and Area District, neither the Board of Adjustment nor the circuit court have power to make such requirement; that power to impose additional requirements, above and beyond the terms of the ordinances, is not conferred upon the Board or Court by provisions authorizing interpretation of the ordinances "for the promotion of the public safety, health, convenience, comfort, prosperity and general welfare;" that such provisions are mere rules of interpretation or construction and do not purport to grant legislative power or authority to the Board to determine matters of policy, or to vary the plain provisions of the ordinances; and to so construe and apply such interpretative provisions would render them unconstitutional and void.

The zoning of a large city such as St. Louis presents a difficult problem which, of necessity, requires long and complicated ordinances, containing many general provisions, each modified by numerous variations and exceptions. A careful scrutiny of the facts in each case is necessary to determine the particular provisions applicable to the property under consideration. The facts in the Fairmont Investment Company case differ somewhat from the facts in the instant case, and yet the principles announced in that case are applicable to the situation in this case. There we found that the property was zoned in a Commercial Use District and a D Height and Area District; that no front yard building line was required and the Board of Adjustment was without power to make such requirement. In the instant case the property is in a Commercial Use District and a C Height and Area District; that generally a front yard building line is required as to property so located, but that subsection M of section 1 of Ordinance 41414 provides that requirement for a front yard line *shall* be waived as to property situated as therein described. We think that under the evidence the Houska property is governed by the provisions of subsection M. So, in the instant case, unlike the situation in the Fairmont Investment Company case, the Board of Adjustment did not attempt to impose an unauthorized requirement, nor did it attempt to waive a requirement unconditionally imposed by ordinance. The Board's order, regardless of the reason therein given, amounts to a compliance with a mandatory provision that a front yard building line *shall* be waived as to property situated as is the Houska property.

Appellant says that respondent Houska pleaded the provisions of subsection 5 of section 16 of Ordinance 35003 as amended by Ordinance 35009 which provision, as applied by the Board of Adjustment in the Fairmont Investment Company case, we held to be unconstitutional. Respondent Houska did plead those provisions, but he also set out the specific facts as to the zoning of his property, its location, the conditions surrounding it and the ordinance provisions which make it unnecessary for him to conform to a front yard building line. We hold his allegations are supported by the evidence and a proper construction of the ordinances.

Appellant devotes the major portion of her brief to argument and citations to show that the Board of Adjustment lacks authority to vary the terms of the ordinances. It is unnecessary to review appellant's citations; most of them are adequately discussed ■ in our opinion in the Fairmont Investment Company case. We adhere to our ruling in that case and hold that it does not conflict with the conclusions we have reached in the instant case, because here the order of the Board does not vary the terms of the ordinance, but complies with them.

Appellant has lived in her property for many years, during which time she has without protest watched the entire block to the east of her fill up with buildings extending to the street. She made no protest when the store building was constructed up to her east line and to the street. Her conduct seems to amount to silent acquiescence that no front yard building line is required. At least, she is not in good position to single out the Houska property as the only one in the block which must observe such requirement. [Scharer v. Pantler, 127 Mo. App. 433.]

We hold that the Board of Adjustment complied with the ordinances in issuing the permit and the circuit court correctly affirmed the action of the Board. Accordingly, the judgment of the court is *affirmed.*

PER CURIAM:—The foregoing opinion prepared by the late ALBERT M. CLARK, Presiding Judge of Division One, is now adopted as the opinion of the Court. All concur.