STATE of Missouri, Respondent,

v.

Robert Lee AYERS, Appellant.

No. 52911.

Supreme Court of Missouri,
En Banc.

Sept. 13, 1971.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Elliott & Marks, Murry A. Marks, Forriss D. Elliott, St. Louis, for appellant.

DONNELLY, Judge.

This is an appeal from a six-year-sentence, imposed under the Second Offender Act, upon a jury verdict finding appellant, Robert Lee Ayers, guilty of manslaughter. V.A.M.S. § 559.070. In this opinion, which is written on reassignment, we adopt substantial portions of the opinion written by Welborn, C., in Division One of this Court.

On June 26, 1966, Charles Gibson was a tenant and occupant of a second-floor apartment at 947 Laurel Avenue in the City of St. Louis. Shortly before noon on that date, residents of other apartments in the building saw Gibson enter his apartment, followed by appellant. Sounds indicating a struggle were heard in Gibson's apartment and then two shots were fired. The occupant of the first-floor apartment who had heard the noise in Gibson's apartment went to the door of his apartment and saw Ayers coming down the stairs, with his shirt out and blood on his clothing. He watched Ayers drive away in an automobile.

Police officers were called to the scene at about 11:57. They removed Gibson to the hospital where he was pronounced dead. An autopsy revealed that death was

caused by a hemorrhage into the chest, produced by a gunshot wound of the heart.

A short time after the shooting, Ayers entered the Seventh District Police Station and told Sergeant Charles Harrington that he had just shot a man on Laurel. The sergeant placed Ayers under arrest and searched him, but found no weapon. After about twenty minutes, Sergeant Harrington and Officer Brown left the Seventh District Station, with Ayers in their custody. As the three left the station, a crying, hysterical woman was in the vicinity of the front steps. Ayers said to her: "I told her I was going to do it if she didn't make up her mind between him and me, who she wanted, me or the boy friend." The apartment had been rented by Gibson and a woman whom he represented to be his wife and who was the wife of appellant.

The trial court, upon an information charging murder in the second degree, instructed on that offense and on manslaughter. The jury found appellant guilty of the latter offense and the trial court, finding the Second Offender Act applicable, sentenced appellant to six years' imprisonment. This appeal followed.

Appellant's first contention, that the evidence was insufficient to prove his guilt of manslaughter, is without merit. In arguing that the State's case was wholly circumstantial, appellant overlooks the direct evidence provided by the appellant's voluntary statements. Appellant's admission that he had shot a man on Laurel was direct evidence of his guilt. State v. Smith, Mo.Sup., 377 S.W.2d 241, 244 [3–5]; State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227, 231–232 [9–10]. We need not decide whether or not the circumstances might, without consideration of appellant's statements, support a finding of guilt. *Manslaughter* "is the unjustifiable, inexcusable and intentional killing of a human being without deliberation, premeditation and malice." State v. Stringer, 357 Mo. 978, 980, 211 S.W.2d 925, 927; V.A.M.S. § 559.070. We have no doubt that the circumstances, coupled with the statements, provide sufficient evidence from which the jury could find appellant guilty of manslaughter.

Appellant's second point is that the trial court erred in allowing Iris West to testify after she stated that she had no idea of the meaning of an oath. Iris was twelve years old at the time of trial, December, 1966. She testified to matters she saw at the time of the shooting, in June, 1966.

After she had been sworn, defendant's counsel objected that Iris was not competent to testify. At the court's suggestion that inquiry be made of her, the circuit attorney elicited from her her age, her place of residence, that she was in the fifth grade of school and that she attended Cabanne Baptist Church every Sunday and believed in God. When asked what happens to a person who doesn't tell the truth, the witness replied: "They will go to jail." The court then suggested that inquiry be made of her understanding of the oath. She was asked the meaning of the oath and she replied that she did not know. The court overruled the motion to remove the witness.

In contending that the trial court's ruling was erroneous, appellant relies solely upon the witness's lack of knowledge as to the meaning of the oath. Heavy reliance is placed upon State v. Jones, 360 Mo. 723, 230 S.W.2d 678, where the trial court was held to have abused its discretion in permitting a five-year-old child to testify. The court in Jones did point to the witness's ignorance of the meaning of the oath. More importantly, however, the court found from the witness's testimony that she was "incapable of having just impressions of the facts respecting which she was examined or of relating them truly; * * *." 230 S.W.2d 681 [4].

Moreover, the witness in Jones was less than ten years of age, the age at which our statute raises a presumption of competency. § 491.060(2), RSMo 1959,

V.A.M.S. The witness in the present case was more than ten years of age, and presumptively qualified. State v. Anderson, 252 Mo. 83, 158 S.W. 817, 821 [7], [8]. Her statement revealed an understanding of the obligation to speak truthfully. Her inability to explain the precise obligation of her oath did not produce an abuse of the trial court's discretion in accepting her testimony. See Rutledge v. State, 32 Okla. Cr. 396, 241 P. 351, 352 [2].

■ No objection at the time was made to the voir dire questioning of the witness by the circuit attorney in the presence of the jury. The procedure followed was not such as calls for relief to appellant under the plain error rule. Supreme Court Rule 27.20(c), V.A.M.R.

■ Appellant urges that the statement of appellant to the woman outside the police station, to which Sergeant Harrington testified, was barred under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The Miranda decision provides the answer to this objection. In Miranda, the court stated: "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Although defendant was in custody when he made the statement, it was voluntarily made, not to police officers, but to a third person. Miranda does not hold such statement inadmissible and there is no reason to extend the Miranda rule to apply to such a statement. State v. Peck, Mo.Sup., 429 S.W.2d 247, 250–251 [6]; State v. Burnett, Mo.Sup., 429 S.W.2d 239, 242–243 [2]. The fact that the trial court saw fit to exclude muttered remarks of defendant after he was placed in the police car demonstrates no error in his ruling on the statement to the woman. Miranda clearly does not exclude the admitted statement. We are not concerned with the admissibility of the excluded statement.

Appellant's final assignment of error is "that there was no evidence adduced by the State to support an instruction on Manslaughter, and the Defendant was either guilty of the offense of Murder in the Second Degree or he was not guilty of any offense * * * and that the trial court erred in instructing the jury on Manslaughter."

Appellant relies upon the statement in State v. Williams, Mo.Sup., 442 S.W.2d 61, 64, that "there must be *proof* of facts tending to show want of premeditation and malice to warrant an instruction on manslaughter." It must be said now that this statement is erroneous. It misconceives the relative functions of judge and jury in a felonious homicide case.

In Hardy v. State, 7 Mo. 607, 609, this Court said: " * * * It is the duty of the judge of a criminal court, as well as of all other courts of record, to instruct the jury in all the law arising in the case, and it is the duty of the jury to respect the instructions of the court as to the law of the case, and to find the prisoner guilty or not guilty, according to the law as delivered to them by the court, and the evidence, as they receive it from the witnesses, under the direction of the court."

In Sparf and Hansen v. United States, 156 U.S. 51, 102, 15 S.Ct. 273, 293, 39 L.Ed. 343, the United States Supreme Court said: " * * * We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence. Upon the court rests the responsibility of declaring the law; upon the jury, the responsibility of applying the law so declared to the facts as they, upon their conscience, believe them to be."

■ In a case involving a felonious homicide, the evidence may show only the intentional killing of a human being. This is manslaughter. V.A.M.S. § 559.070. If, in addition, the elements of premeditation and malice, but not deliberation, are shown, the offense is murder in the second degree. V.A.M.S. § 559.020. If, in addition, the

element of deliberation is shown, the offense is murder in the first degree. V.A. M.S. § 559.010.

It is the duty of the court to "instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict * * *." V.A.M.S. § 546.070(4); S.Ct. Rule 26.02, V.A.M.R.; Hardy v. State, supra.

In this case, appellant was charged with murder in the second degree. If, as in the Sparf case, supra (156 U.S. 51, 64, 15 S.Ct. 273, 278), there had been, *as a matter of law,* "an entire absence of evidence upon which to rest a verdict of guilty of manslaughter," the trial court could properly have instructed the jury only as to murder in the second degree. Cf. State v. Jones, 64 Mo. 391; and State v. Bradley, 361 Mo. 267, 234 S.W.2d 556 [21].

However, we hold, *as a matter of law,* that the evidence *in this case* will support a finding of murder in the second degree or manslaughter. Cf. Stevenson v. United States, 162 U.S. 313, 315, 16 S.Ct. 839, 40 L.Ed. 980. This being true, it was the duty of the trial court to instruct as to murder in the second degree and manslaughter *and to leave to the jury the fact question* whether appellant acted with premeditation and malice. The trial court did not err.

The Williams case, supra, insofar as it conflicts with this opinion, is overruled.

The judgment is affirmed.

HOLMAN and BARDGETT, JJ., concur.

FINCH, C. J., concurs in separate concurring opinion filed.

MORGAN and HENLEY, JJ., concur and concur in separate concurring opinion of FINCH, C. J.

SEILER, J., concurs in result in separate concurring opinion filed.

FINCH, Chief Justice (concurring).

I concur in the principal opinion and file this separate opinion only to point out that manslaughter is defined in § 559.070, RSMo 1969, V.A.M.S., and that as this court said in State v. Williams, Mo., 442 S. W.2d 61, 64, "There is but one definition of manslaughter in this state, and that is contained in § 559.070, supra." The principal opinion holds that Williams was incorrect in holding that there must be *proof* of facts tending to show want of premeditation and malice to warrant a manslaughter instruction. I do not understand that it intends to hold that Williams is wrong in recognizing that the correct definition of manslaughter is the one set out in § 559.070. Hence, the reference in the principal opinion to the definition of manslaughter contained in State v. Stringer, 357 Mo. 978, 980, 211 S.W.2d 925, 927, should not be construed as establishing a different definition of that offense.

SEILER, Judge (concurring in result).

I concur in the result reached in this case and in the language of the principal opinion that if there had been an entire absence of evidence to support a conviction of manslaughter the trial court could have instructed only on second degree murder. No defendant may be constitutionally convicted of manslaughter when there is no evidence to prove his guilt thereof. I see no reason, however, to overrule State v. Williams, (Mo.Sup. banc) 442 S.W.2d 61. I take the part quoted—that "there must be proof of facts tending to show want of premeditation and malice to warrant an instruction on manslaughter"—to mean that in order to convict of manslaughter the jury must find that defendant acted without malice and without premeditation. That is the way the instructions read here. Under No. 1, the jury could convict of second degree murder if they found defend-

ant acted "premeditatedly and of his malice aforethought, but not deliberately." Under No. 2, the jury could convict of manslaughter if they found defendant acted "intentionally, without malice and without premeditation."

Sec. 559.070, RSMo 1959, V.A.M.S. defines manslaughter by a process of elimination. It is a killing not declared to be murder. Murder is defined by Secs. 559.010 and 559.020 and involves deliberation, premeditation and malice. A fortiori, manslaughter does not.