STATE of Missouri,
Respondent,

v.

Merle Richard STURDIVAN,
Appellant.

No. 57539.

Supreme Court of Missouri,
Division No. 1.

July 16, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Duncan & Russell, Kansas City, for appellant.

HIGGINS, Commissioner.

Merle Richard Sturdivan, charged with murder, first degree, was convicted by a jury which assessed his punishment at life imprisonment. Sentence and judgment were rendered accordingly. §§ 559.010, 559.030, RSMo 1969, V.A.M.S. (Appeal taken prior to January 1, 1972.)

The case was submitted on instructions covering murder, first degree; and appellant contends, first, that the court erred in refusing to instruct on murder, second degree, and manslaughter, "there being sufficient evidence to support and require that submission." He asserts that the evidence "suggested that the defendant failed to deliberate on his actions, thus reducing it to murder in the second degree"; and that "the defendant's act lacked premeditation or malice, which would have required the manslaughter instruction."

■ When the evidence shows murder, first degree, and no lesser degree of homicide, the court is not required to instruct, and does not err by failure to instruct, on lesser degrees or offenses. State v. King, 433 S.W.2d 825, 827[6] (Mo.1968); State v. Taylor, 347 Mo. 607, 148 S.W.2d 802, 805[5, 6] (1941); State v. Barbata, 336 Mo. 362, 80 S.W.2d 865, 868 (1935); State v. Holland, 354 Mo. 527, 189 S.W.2d 989, 997–998[8, 9] (1945). See also State v. Glenn, 429 S.W.2d 225, 234[16] (Mo. banc 1968).

■ Under Section 559.010, RSMo 1969 V.A.M.S., the jury, in order to convict, must have evidence from which to find the killing was willful, premeditated, deliberate, and with malice aforethought; and neither motive nor a deadly weapon are elements of murder, first degree. State v. Henderson, 301 S.W.2d 813, 816 (Mo. 1957); State v. Lamborn, 452 S.W.2d 216, 218 (Mo.1970).

Appellant does not question the sufficiency of evidence to sustain his conviction; and the record contains evidence, all of which was adduced by the State, from which the jury reasonably could find that:

On May 4, 1971, defendant met Dr. Samuel Chapman, the victim, between 6:30 and 7:30 p. m., at the Ivanhoe Bar in downtown Kansas City, Missouri. Dr. Chapman sat beside defendant and bought him some drinks and asked him to accompany him. Dr. Chapman left the bar and about five minutes later defendant saw him sitting in his Cadillac parked in front of the bar. Defendant joined Dr. Chapman who drove to the airport Holiday Inn in North Kansas City, Clay County, Missouri, and rented a room. Dr. Chapman ordered three drinks for defendant, took a shower, and then became the passive partner with defendant—the dominant partner in an act of anal intercourse. After the intercourse, defendant strangled Dr. Chapman with his bare hands and to make sure he was dead, wrapped a towel around his neck and held

it in place for a few minutes. Defendant then put the towel beside his victim's body, went through his clothes, and took his watch, ring, and car keys. Defendant left the motel in the victim's Cadillac and, some hours later, met a young boy, Charles Aulgur, at the Patio Bar in Kansas City. They went drinking together and defendant took Mr. Aulgur to the Flamingo Motel in Kansas City, Kansas, and there engaged in an act of anal intercourse. Defendant then drove Mr. Aulgur back to Kansas City, Missouri, and, upon his return to Kansas, wrecked the Cadillac. He sustained a cut above his eye and was fortuitously discovered by Mr. Aulgur who took him back to the Flamingo Motel to clean his wound.

Defendant was identified by both the owner and the bartender at the Ivanhoe Bar as having been in company with Dr. Chapman at the bar May 4, 1971. Both recalled that Dr. Chapman bought drinks for defendant and that defendant left the bar shortly after Dr. Chapman left. The desk clerk at the Holiday Inn recalled registering Dr. Chapman around 9:30 p. m., May 4, 1971. Charles Aulgur identified defendant as the party he met at the Patio Bar, had sex relations with at Flamingo Motel, and discovered on the highway in Dr. Chapman's wrecked Cadillac.

Dr. Chapman's body was found in his room at the Holiday Inn by the administrator of the hospital where he was employed. There was no indication of a struggle and the room, contents, and clothing were neat and orderly. A palm print found on the television set was identified as that of defendant. A pathologist stated Dr. Chapman's death was caused by manual strangulation.

Defendant was arrested by police officers May 6, 1971, in downtown Kansas City, Missouri, wearing clothing and otherwise matching descriptions given by the owner of the Ivanhoe Bar and Mr. Aulgur. He was wearing his victim's watch and ring.

The foregoing demonstrates a case of murder, first degree, by willful, deliberate, and premeditated strangulation, as charged under Section 559.010, supra, and as submitted by Instruction No. 3, and as its elements were defined by Instructions Nos. 4 and 5.

■ In particular, the evidence demonstrated that the killing was willful or intentional. The act of manual strangulation followed by the act of wrapping the towel around the victim's neck reasonably permitted a finding of willfulness. Premeditation, deliberation, and malice may be inferred from the circumstances surrounding the killing. State v. Williams, 369 S.W.2d 408, 417 (Mo. banc 1963). Premeditation may be reasonably inferred from the bare hand strangulation of defendant's victim and the subsequent application of the towel for two or three minutes longer to make sure he was dead. There was no evidence of passion or provocation, by way of argument, involuntary association, disturbances, or struggle. To the contrary, the evidence shows that defendant and victim associated voluntarily and that there were no reports of disturbance in the motel room and that the room was in order upon discovery of Dr. Chapman's body. With evidence of provocation lacking, the previously demonstrated intent to kill provided deliberation; malice was shown by defendant's admission that he did not know why he killed Dr. Chapman, in that he admitted he had no just cause or excuse for his intentional killing of Dr. Chapman.

Accordingly, there was no lack of evidence as to any of the essential elements of murder, first degree.

■■ Only when deliberation is absent does the homicide become murder, second degree, Section 559.020, RSMo 1969, V.A.M.S., State v. Bruton, 383 S.W.2d 525, 528 (Mo.1964); and it is lacking where provocation produces a state of passion as to interfere with judgment and reason, State v. Jackson, 344 Mo. 1055, 130 S.W.2d 595, 597 (1939), State v. West, 346 Mo. 563, 142 S.W.2d 468, 471 (1940). Evidence of mental disease, if present (as suggested by defendant's plea of not guilty by reason of insanity), would not reduce the degree of homicide; but, if found, would call for acquittal. State v. Glenn, supra; State v. Holloway, 156 Mo. 222, 56 S.W. 734, 737 (1900).

■ Manslaughter is the intentional killing of a human being in heat of passion, on reasonable provocation, without malice and premeditation. § 559.070, RSMo 1969, V.A.M.S.; State v. Hunter, 444 S.W.2d 392, 394 (Mo.1969). Where there is evidence of an assault or violence inflicted upon the slayer by the deceased, an instruction on manslaughter should be given, State v. Creighton, 330 Mo. 1176, 52 S.W.2d 556, 561 (1932), State v. Stallings, 326 Mo. 1037, 33 S.W.2d 914, 917 (1930); and there need not be proof of an absence of premeditation and malice in order to instruct on manslaughter; however, there must be some evidence upon which to rest a verdict of manslaughter, State v. Ayers, 470 S.W.2d 534, 538 (Mo. banc 1971). Where there is no evidence of provocation, assault or encounter which excites passion beyond control or of culpable negligence, there is no duty to instruct on manslaughter. State v. Ginnings, 466 S.W.2d 675, 677 (Mo.1971); State v. Lamborn, supra; State v. Hunter, supra; State v. Taylor, 309 S.W.2d 621, 624 (Mo.1958).

By way of distinction, cases cited by appellant, e. g., State v. Tinson, 461 S.W.2d 764 (Mo.1970), State v. Jackson, supra, State v. Brinkley, 354 Mo. 1051, 193 S.W. 2d 49 (1946), State v. Bruton, supra, State v. Creighton, supra, State v. Stallings, supra, State v. Curry, 372 S.W.2d 1 (Mo. 1963), State v. Taylor, supra, State v. Williams, 442 S.W.2d 61 (Mo. banc 1969) (overruled, State v. Ayers, supra), involved provocation, assault or altercations between the defendant and his deceased victim.

■ Here there is no evidence of provocation; therefore, no basis for a verdict of guilt of murder, second degree, or of

manslaughter and, therefore, no error in failure to instruct on those offenses. State v. Glenn, supra; State v. Ginnings, supra.

Prior to trial, on June 25, 1971, defendant moved for mental examination under provisions of Chapter 552, RSMo 1969, V. A.M.S. On June 30, 1971, defendant's motion was sustained and he was committed to the Director of Division of Mental Diseases of Missouri for that purpose. On August 4, 1971, the medical report of the examination of defendant at Fulton State Hospital was transmitted to the court. It recited, in addition to the facts of the case, defendant's criminal history dating back to 1956 for such charges as burglary, robbery, destruction of property, and investigation of homicide, his chronological history, mental status, i. e., orientation, memory, speech and mental activity, mood and affect, insight and judgment, psychological testing, course in hospital, present condition, and diagnosis. The findings were:

"(1) That the accused has no mental disease or defect within the meaning of Section 552.010.

"(2) That the accused has the capacity to understand the proceedings against him and can assist in his own defense.

"(3) That the accused did know and appreciate the nature, quality and wrongfulness of his alleged conduct.

"(4) That the accused was capable of conforming his conduct to the requirements of the law."

And the recommendation was: "Since there is no supportive evidence to indicate that this patient was suffering from a mental disease or defect at the time of the crime or since he has been hospitalized at Fulton, he is being returned to the proper authorities for disposition of the charges pending against him."

On October 18, 1971, the court found from the foregoing report that defendant was not suffering from a mental disease or defect at the time of the alleged crime or since that time; whereupon, defendant entered pleas of not guilty and not guilty by reason of insanity to the crime of murder, first degree, as charged.

Appellant contends (II) that his right to due process was violated by Sections 552.-010, 552.020, and 552.030, RSMo 1969, V. A.M.S., "which permit an insane man to stand trial"; and (III) that he was denied his right to fair trial in that Sections 552.-010, 552.020, and 552.030 are unconstitutional "since they fail to provide equal protection of the law to all criminally insane persons."

Appellant's argument under II is that he, as a "sociopathic" or "psychopathic" person, is held accountable for his crimes "although recent psychiatric evidence and opinion would indicate that such individuals are and should be considered legally insane and incompetent." In making this assertion, he cites a number of treatises, yet concedes that Missouri's test of criminal responsibility in Section 552.030, supra, has been accepted as accurate, United States v. Currens, 290 F.2d 751 (3rd Cir. 1961), and adopted by ALI Model Penal Code § 4.-01(1). See also Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862 (1954). He hypothesizes further that "should the most brilliant experts in the field of psychiatry determine that chronic alcoholism without psychosis is indeed a mental disease or defect, the unfortunate defendant [in Missouri] would still be denied his viable and proper insanity defense because of the State's usurp[a]tion in the field of medicine." His argument under III, again referring to a number of treatises, is that the statutory standard of "mental disease or defect" excludes other conditions, e. g., diseases of metabolism, and others in which hysteria, ultra-aggressive behavior, manic excitement, somatic psychoses, and progressive dementia "may well occur which would often leave the poor victim of such diseases unable to control his actions or 'conform' his conduct to the law as suggested by Sections 552.020 and 552.030."

The legislature is empowered to enact statutes defining criminal responsibility and standards for determination of legal insanity. Leland v. Oregon, 343 U.S. 790, 800–801, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952); Castro v. People, 140 Colo. 493, 346 P.2d 1020, 1028 (Colo.1959); State v. McGee, 361 Mo. 309, 234 S.W.2d 587 (Mo. banc 1950). Chapter 552, RSMo 1969, V. A.M.S., particularly Sections 552.010, 552.-020, and 552.030, adapted from ALI Model Penal Code, does not specify any particular mental disease or defect, but considers all classifications and symptoms of mental disease. State v. Garrett, 391 S.W.2d 235, 239–240 (Mo.1965); Missouri's Mental Responsibility Law—Symposium, 19 Mo.Bar J. 683, 684 (Mo.1963). With respect to appellant's argument that the act unconstitutionally excludes sociopathy and psychopathy from the definition of mental disease, the act shows that the exclusion does not affect all sociopaths and psychopaths, but applies only to those whose "abnormality [is] 'manifested only by repeated criminal or otherwise anti-social conduct.'" State v. Garrett, supra, 391 S.W.2d l.c. 239; 19 Mo.Bar J., supra, l.c. 688–689. Even in those cases it does not violate due process to exclude from mental disease or defect a condition which some psychiatrists might deem mental illness or insanity. Leland v. Oregon, supra; Castro v. People, supra; State v. McGee, supra. Similarly, it does not violate due process to establish a standard for determining competency to stand trial and another for responsibility for commission of the alleged criminal act. State v. McGee, supra. Finally, it should be noted that a finding of competency to stand trial does not affect a defendant's ability or right to plead not guilty by reason of mental disease or defect, State v. Brizendine, 433 S.W.2d 321, 335 (Mo. banc 1968), and defendant has done so in this case.

Finally, appellant contends his right to due process and equal protection of the law was violated by Sections 552.010, 552.-020, and 552.030, supra, "in that they discriminate against the poor and indigent." His argument is that, even though he was provided psychiatric examination without cost to him as an indigent on his motion, "the statute prevented an additional examination without cost" to him and he was thus denied preparation for his real defense.

As recognized by appellant, this contention was made and denied in State v. Terry, 472 S.W.2d 426, 429–430[5] (Mo. banc 1971). See also State ex rel. Hoover v. Bloom, 461 S.W.2d 841 (Mo. banc 1971); Newbold v. State, 492 S.W.2d 809 (Mo. 1973). As noted in State v. Terry, supra, nothing was presented here to show a doubt of the objectivity of the examination already accorded defendant.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.