STATE of Missouri, Plaintiff-Respondent,

v.

Robert C. EILAND, Defendant-Appellant.

No. 36840.

Missouri Court of Appeals,
St. Louis District,
Division Four.

March 9, 1976.

Neal P. Murphy, Asst. Public Defender, James C. Jones, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Robert L. Presson, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

Robert Eiland, charged with first degree murder of Jackie Jones and convicted of murder in the second degree, has appealed, challenging the sufficiency of the evidence to support the verdict.

At approximately 7 p. m. July 25, 1973, Jackie Jones, the 17-year-old victim, accompanied by her brother Otis Jones, age 16, and her boyfriend Richard Works, 24, arrived at 2020 East Grand in the City of St. Louis, where they went to Lorenzo Williams' upstairs apartment. Several others were playing cards. Jackie and Richard watched television. During the evening Otis went downstairs. There he observed appellant conversing with one Eddie Flem-

ing and saw appellant hand Eddie a $10 bill. At about 11 p. m. appellant came upstairs to the doorway of Lorenzo's apartment and asked Richard if "anything was happening." Richard answered in the negative. Appellant went downstairs. Shortly thereafter Eddie Fleming got change for the $10 bill from Richard and proceeded to play cards with the others. Appellant returned to the apartment door, asked Richard if he knew a "Tony" (evidently referring to Eddie Fleming). Richard answered in the negative. Appellant went downstairs to the street. Joseph Williams, who came to Lorenzo's apartment shortly after appellant's second departure from the apartment door, testified that appellant had said that "if he don't get his money there's going to be some stuff." Richard, Otis and Jackie, with two others, went downstairs to the steps in front of the building. Appellant, who was there, approached Richard and asked if "Tony" had come up there with $10. Richard repeated that he did not know a "Tony." Appellant then got into the back seat of a white Oldsmobile automobile. The driver was a man. There was a woman passenger in the right front seat. The Oldsmobile pulled north on Grand, circled the water tower and came back south towards the place where Jackie and the others were standing in front of 2020 East Grand. When the automobile approached the place where the group was standing it slowed to 3–5 miles an hour and two shotgun shots were fired from the back seat of the Oldsmobile. The second shot struck Jackie Jones on the back of the head as she entered the building through the door. She died from the gunshot wound. Otis Jones testified that appellant fired the shot that killed Jackie Jones.

■ Otis Jones' testimony is challenged by appellant as conflicting and without probative value. Appellant notes these inconsistencies: that at trial Otis testified the shots were fired by appellant from the back seat of an *Oldsmobile which had stopped* about even with the steps where he, Jackie and another were standing, whereas he told police and grand jury the shots were fired from a *Monte Carlo automobile which was moving* at the time; that at trial Otis maintained he could identify appellant, seated in the back seat, and could identify the woman passenger on the other side of the driver, but could not see the driver "too good," although the driver was closer to Otis than the woman; that at trial Otis testified he was standing on the curb when the shots were fired but told the grand jury the second shot was fired when he started to run. Inconsistencies such as these affect the weight, not the admissibility or sufficiency, of the evidence. It is for the jury to determine whether the witness' testimony at trial is credible in the light of the inconsistencies. *State v. Spinks,* 344 Mo. 105, 125 S.W.2d 60 (1939); *State v. Austin,* 496 S.W.2d 799 (Mo. banc 1973), cert. den. 414 U.S. 1044, 94 S.Ct. 549, 38 L.Ed.2d 336; *State v. Collins,* 520 S.W.2d 155 (Mo.App. 1975). Notwithstanding the inconsistencies there was eyewitness testimony that appellant fired the fatal shot and there was sufficient evidence to support the verdict of guilty.

■ Appellant contends that the court committed reversible error in permitting Richard Works to testify that Joseph Williams came up to the apartment between appellant's two appearances there and said "that dude said if he don't get his money there's going to be some stuff." Appellant brands this as clearly hearsay, says it was properly objected to, and claims it was not admissible under any exception to the hearsay rule. As pointed out by the Attorney General the error, if any, in admitting this hearsay evidence was not prejudicial under the rule laid down in *Baker v. Woodbury,* 492 S.W.2d 157[3] (Mo.App.1973), for the reason that the same facts had already been elicited in the course of cross-examination in the defense's attempt to impeach the State's star witness, Otis Jones, without any objection by appellant. The transcript, page 56, supports the State's contention. " 'One will not be heard to complain of the

admission of testimony over his objection, where evidence of the same tenor has been admitted without his objection.'" *Baker v. Woodbury,* supra, 492 S.W.2d l. c. 159. Appellant seeks to invoke the plain error Rule 27.20(c), but "[i]n view of the fact that defense counsel had previously elicited such testimony * * * on cross-examination, we reject the suggestion that the matter should be considered under the plain error rule." *State v. Franklin,* 448 S.W.2d 583, 584[3] (Mo.1970).

■ Appellant further contends that it was error to admit the following hearsay testimony, given by witness Richard Works:

"Q What did he [Eddie Fleming] tell you about the ten dollars?

"A He said didn't nobody give him no ten dollars and then he said, 'so what, you would have ripped him off too.' I said you're going to have to leave because you can't come up here and take nobody's money and then I put him out the back door."

Appellant did not object to this particular question or move for curative action after the answer given, and therefore no issue was preserved for appellate review.

Appellant has preserved for appellate review the question whether the court erred in failing to instruct the jury on manslaughter.

■ In instructing juries in homicide cases tried after March 1, 1975, additional instructions both on second degree murder and manslaughter must be given in all cases where the pleadings and evidence warrant the submission of first degree murder. See Notes on Use 6 under MAI–CR § 6.02. The notes on use, however, are prospective in application; do not apply to cases tried before that date. *State v. Williams,* 529 S.W.2d 883, 888 (Mo. banc 1975). And see *State v. Mudgett,* 531 S.W.2d 275 (Mo. banc

1975). This homicide and the trial of this case occurred prior to March 1, 1975. The giving of a manslaughter instruction was not then automatic. Such an instruction was required only if there was evidence to support it. *State v. Henderson,* 510 S.W.2d 813, 823[17] (Mo.App.1974). Whether appellant was entitled to an instruction on manslaughter depended upon "whether from the evidence introduced the jury could have found that he unjustifiably and inexcusably killed deceased without premeditation or malice," *State v. Anderson,* 515 S.W.2d 534, 537 (Mo. banc 1974)[1]; whether there was an "* * * 'unjustifiable, inexcusable and intentional killing of a human being without deliberation, premeditation and malice.' *State v. Stringer,* 357 Mo. 978, 980, 211 S.W.2d 925, 927; V.A.M.S. § 559.070." *State v. Ayers,* 470 S.W.2d 534, 536 (Mo. banc 1971).

■ Preliminarily we observe that this is a case of transferred intent, submitted on the theory that appellant caused the death of Jackie Jones in an attempt to take the life of Eddie Fleming. If appellant was not justified in shooting at Fleming, and if in shooting at a person whom he thought was Fleming he shot and killed Jackie Jones by misadventure or mistake, then appellant's guilt in killing her must be measured and the degree of homicide determined by what his crime would have been had he shot and killed Fleming. *State v. Stallings,* 326 Mo. 1037, 33 S.W.2d 914, 916[4] (1930). Paraphrasing *State v. Pollard,* 139 Mo. 220, 40 S.W. 949, 952 (1897), it mattered not that defendant missed his mark and killed Jackie, instead of Eddie, because in such cases the intention follows the bullet.

■ "[T]here must be some evidence upon which to rest a verdict of manslaughter, *State v. Ayers,* 470 S.W.2d 534, 538 (Mo. banc 1971). Where there is no evidence of

1. "There is but one definition of manslaughter in this state, and that is contained in § 559.070," V.A.M.S., *State v. Williams,* 442 S.W.2d 61, 63–64 (Mo. banc 1969), as follows: "Every killing of a human being by

the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter."

provocation, assault or encounter which excites passion beyond control or of culpable negligence, there is no duty to instruct on manslaughter. *State v. Ginnings*, 466 S.W.2d 675, 677 (Mo.1971); *State v. Lamborn*, 452 S.W.2d 216 (Mo.1970); *State v. Hunter*, 444 S.W.2d 392 (Mo.1969); *State v. Taylor*, 309 S.W.2d 621, 624 (Mo.1958). * * * Here there is no evidence of provocation; therefore, no basis for a verdict of guilt of murder, second degree, or of manslaughter and, therefore, no error in failure to instruct on those offenses. *State v. Glenn*, 429 S.W.2d 225 (Mo. banc 1968)." *State v. Sturdivan*, 497 S.W.2d 139, 142 (Mo.1973). "If, as a matter of law, the court can declare that there is an entire absence of evidence upon which to support a verdict of guilty of a particular offense (whether it be murder in the first degree, murder in the second degree, or manslaughter), the court should not instruct thereon." *State v. Anderson*, supra, 515 S.W.2d l. c. 537; *State v. Ayers*, supra, 470 S.W.2d l. c. 538.

The evidence in this case conclusively demonstrates a case of first or second degree murder, if the State's evidence is to be accepted, or that appellant was not guilty of any offense because he was not present, if appellant's alibi evidence is to be believed. The case is reminiscent of the situation in *State v. Collins*, 520 S.W.2d 155 (Mo.App.1975), where the victims were ambushed by appellant and other persons concealed in the rear of a camper truck. There the intentional killing of helpless persons was held to show only the offense of first degree murder. This court rejected the contention that the trial court erred in failing to instruct on the lesser offenses of second degree murder and manslaughter, and held that where the evidence shows only the offense of first degree murder an instruction on second degree murder or manslaughter is not required. In the case before us there is some evidence of a misunderstanding between appellant and Eddie Fleming with respect to a $10 bill, and this perhaps impelled the trial court to instruct on second degree murder (to give the jury a choice to draw the inference of deliberation vel non). See *State v. Johnson*, 505 S.W.2d 94 (Mo.1974).

In this direct (not circumstantial) evidence case—killing a person by firing a deadly weapon in ambush from the back seat of a moving automobile, not as the result of a sudden provocation, calculated to excite the passion of the accused beyond control—the elements of second degree murder (premeditation and malice) are present as a matter of law, but it is equally clear as a matter of law that there is a complete absence of evidence upon which to rest a verdict of guilty of manslaughter. As in *State v. Clough*, 327 Mo. 700, 38 S.W.2d 36, 38 (1931), "there is no room for manslaughter" in this case. See also *State of Missouri v. Mudgett*, supra. This was a senseless, ambush-type murder, gangland style, without any confrontation, assault or physical encounter between killer and actual or intended victim; no provocation; no suddenly aroused passion; no element of justification or excuse. There was no occasion to instruct on the lesser offense of manslaughter because the evidence excluded a finding of manslaughter as a matter of law; the trial court could properly have instructed only on the crime of murder. *State v. Ayers*, supra, 470 S.W.2d l. c. 538.

The judgment of conviction of second degree murder is affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.